[No. 1182. Decided February 23, 1894.]

CITY OF SPOKANE, *Appellant*, v. J. J. BROWNE AND
ANNA W. BROWNE, *Respondents*.

MUNICIPAL CORPORATIONS—ASSESSMENT FOR STREET IMPROVE-
MENT—CHANGE OF METHOD—RIGHTS OF CITY AND ABUTTING
OWNERS—DESCRIPTION OF IMPROVEMENTS.

Although a street improvement has been initiated by a city
under a law providing for assessment therefor according to valua-
tion of property in the assessment district, and, during the progress
of the improvement, the law has been changed so as to provide for
assessment per front foot of the abutting property, yet the assess-
ment under the scheme subsequently adopted will be valid and
binding, provided the property owners are not thereby called upon
to pay any greater amount of money nor to make any earlier pay-
ment than was required under the law in force at the time of be-
ginning the improvement.

Where the contract for a street improvement was let and the
work partly done before the adoption of a new city charter, which
changed the method of assessment, such repeal would not affect the
right of the city to enforce its equitable right to reimbursement by
the property owner for the obligations incurred by the city under
its contract for such improvement. (*Wilson v. Seattle*, 2 Wash. 543,
distinguished.)

Proceedings for a street improvement are not void because the
ordinance provides for grading the street from the Seattle, Lake
Shore & Eastern Railway to the south line of Buckeye street, and
the assessment roll describes the work as done from the Union Pa-
cific Railway to the Fair Grounds, when it is shown that such
boundary lines are in fact identical.

Where an ordinance provides that a certain street be "graded,"
it is sufficient to authorize improvements consisting of "grading,
grubbing, guttering and curbing" the street.

*Appeal from Superior Court, Spokane County.*

*James Dawson*, and *Jones, Belt & Quinn*, for appellant.

*R. B. Blake*, and *Frank T. Post*, for respondents.

The opinion of the court was delivered by

SCOTT, J.—Respondents were owners of certain lands
within a district created by the city council of the city of

Spokane under its 1885 charter, for the purpose of levying an assessment to pay for certain street improvements. Said improvements were provided for and directed by an ordinance passed under said charter, and work was commenced thereon, but the improvements were not completed until after the adoption of the freeholders' charter on March 24, 1891. The ordinance directing the improvement, and under which the work was performed, provided for an assessment on the lands within the district according to value. After the adoption of the freeholders' charter and the completion of the work, this scheme of assessment was abandoned, and a levy per foot front on the lands abutting on the street to pay for such improvements was made. The respondents refused to pay such assessment on the lands owned by them abutting upon the street which was improved, and this suit was brought in equity to enforce a lien therefor against the same. A trial was had and a judgment was rendered in favor of the respondents, and the city has appealed.

The respondents contend that the city had no right to change the method of assessing the expenses for such improvements from the plan according to valuation to the later one of per foot front, and that the city should have pursued the original plan under which the work was ordered.

It is contended that at the time the work was directed under the previous charter, improvements of this sort could not be made except upon petition of property holders or by a given vote of the council, and that the improvements in question were instituted and occasioned by and in pursuance of a petition from such property holders, or some of them, owning lands in the vicinity. Furthermore, that a right of protest was given to such property owners, and the right to appear before the council to object to the proceedings at certain stages. It is contended that such prop-

erty owners had a vested right to have the assessment levied according to the provisions of the ordinance under which the work was done.   A number of cases have been cited by respondents as sustaining this contention.   In *Cincinnati v. Seasongood*, 46 Ohio St. 296 (21 N. E. 630), it was held that the city should be governed in making the assessment by the law in force at the time of the passage of the improvement ordinance.   This was a suit brought by the city against a property owner to enforce an assessment.   In *Houston v. McKenna*, 22 Cal. 550, which was an action by a contractor against a property owner, it was held that the law relating to assessments in force at the time the contract was entered into became a part of the contract, which neither the legislature nor the city had a right to change thereafter.

In our opinion, however, the cases cited by the respondents fail to sustain their contention in this case.   What was such vested right?   Not that the assessment should be collected in any particular manner, so far as property owners were concerned, but rather that they should not be called upon to pay in excess of a certain sum.   It does not appear in this case that the respondents have been in anywise injured, or that they have been called upon to pay in this action or by this levy any greater sum than they would have been required to pay in the original scheme of assessing according to valuation.   Nor does it appear that they have been asked or required to make any earlier payment. In our opinion, in order for them to attack the assessment it must appear that it has worked to their injury.   Otherwise they have no right to complain, for the manner of making the assessment and collecting the same is otherwise of no consequence to them.   Elliott, Roads and Streets, p. 379.

It is contended by appellant that these authorities cited by respondents do not sustain their contention with regard

to having any vested right in the premises, on the ground that under the provisions of the law involved in the case of *Cincinnati v. Seasongood* aforesaid, the city was authorized to collect the expenses of such improvements in any one of three ways — according to the benefits to the contiguous property assessed, or according to the value of the property assessed, or by the foot front of the property abutting upon the improvement — but was required to determine under which method the improvement should be made before entering upon the same. While the Spokane charter contained no such provision.

We are unable to see, however, how this fact detracts from the force of this case as authority in the premises. The fact that the city was called upon to determine in advance which method it would pursue does not materially affect the principle decided, which was, in effect, that the scheme could not be subsequently changed to the injury of the property owner. We are disposed to follow that rule in this case, and we are of the opinion that the respondents' claim, that they have a vested right in the scheme first adopted, must be sustained; but with the qualification that such vested right was not in the manner of making the assessment, nor of collecting it, but only in the amount which they should be called upon to pay, and possibly in the time of payment, and if they were not called upon to pay any more money, nor to make any earlier payment under the scheme subsequently adopted, they suffered no injury in the premises and cannot be heard to complain.

It is further contended upon the part of the city that the effect of the adoption of the freeholders' charter was to repeal the prior laws under the previous charter authorizing the levy according to valuation to collect the expenses of such improvements. *Wilson v. Seattle*, 2 Wash. 543 (27 Pac. 474), is cited as supporting this proposition, and that

the assessment could only have been made under the pro-
visions of the new charter.    But that case was based upon
an essentially different state of facts.    The record did not
show that any work had been done or any contract there-
for entered into at the time the council attempted to levy
the assessment, and prior to this time the law had been
changed by the adoption of the new charter.    The owner
was contesting the *assessment* on the ground that he had
never had, and could not have, an opportunity to be heard,
as under the new charter his property would be sold without
suit, and at that time no liability had been incurred by the
city.    But in the case now before us, where the contract
was let and the work partly done before the new charter
was adopted, the city had incurred obligations under its
contract, and an equitable right to be reimbursed by the
property owner had accrued to it, measured by its liability
in proportion to the value of each owner's property.    This
equitable claim it has a right to enforce, as it is doing, by
suit in which the owners are heard, and, if they suffer no
damage by the changed method of assessment, it makes no
difference upon what basis the assessment is calculated.

The respondents further contend that said proceedings
were void on the ground that there was no sufficient de-
scription of the improvement contained in the ordinance
under which the work was done; that by § 7 of the 1885–6
charter (Laws, p. 302), the city had power to curb, pave,
grade, plank, macadamize and gutter its streets and levy
assessments upon the adjoining property for payment of
the expenses thereof.    The first section of the ordinance
directing this particular improvement provides that Wash-
ington street shall be graded at the expense of the adjacent
property, and this is the only description of the work con-
tained in the ordinance.    And they further object that the
assessment roll introduced in evidence does not correspond
in its description of Washington street with the part of

said street described in the improvement ordinance. In the ordinance it is provided that Washington street should be graded from the Seattle, Lake Shore & Eastern Railway to the south line of Buckeye street, while the property included in the assessment is all that property abutting on Washington street from the Union Pacific Railway to the fair grounds. These objections are untenable, for we think the character of the improvements made, viz., "grading, grubbing, guttering and curbing Washington street," was sufficiently described by the use of the word "graded" in the ordinance, and it sufficiently appears that the Seattle, Lake Shore & Eastern Railroad and the Union Pacific Railroad as it crosses Washington street are identical, and the same is true of the south line of Buckeye street and the fair grounds.

A further objection relates to a seeming discrepancy between certain sections of the new charter relating to street improvements, one of which seems to contemplate that ordinances shall be passed prescribing the mode of assessing therefor, and none such were passed. A complete scheme, however, is provided by other sections of the charter, and we think the people had power to include these regulations in the charter for this purpose; but we do not wish to be understood as sanctioning the provision purporting to bar property owners from contesting such proceedings in the courts.

The judgment of the superior court is reversed, and the cause remanded with instructions to enter a judgment in favor of the appellant for the amount claimed.

DUNBAR, C. J., and ANDERS and STILES, JJ., concur.

HOYT, J., concurs in the result.