[No. 1922.   Decided January 10, 1896.]

HENRY A. FREDERICK et ux., *Respondents*, v. THE CITY
OF SEATTLE et al., *Appellants.*

MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — REASSESSMENT
AFTER VOID ASSESSMENT — EFFECT OF CURATIVE ACT OF LEGIS-
LATURE — CERTIORARI — PROPER PARTIES.

Under Laws 1893, p. 226, providing for reassessment for local im-
provements by cities and towns where the assessment made had
been declared to be invalid, a municipal corporation is vested with
power to make a new assessment, although the original assessment
was void for want of compliance with certain jurisdictional require-
ments prescribed by its charter, and it is not essential to the validity
of the reassessment that such jurisdictional prerequisite should be
complied with.

Where the original assessment levied by a city for the cost of
making a local improvement has been declared void for want of
compliance with a jurisdictional requirement of prior petition by
property owners, the legislature may, in providing for a reassess-
ment, dispense with such requirement, since it had power in the
first instance to provide that the work should be done and the as-
sessment made without such requirement.

In certiorari proceedings for the review of an assessment of the cost
of a local improvement, the city is a proper party in interest, no
matter what its ultimate responsibility may be, since it is primarily
responsible for the collection of the assessment

Appeal from Superior Court, King County.—Hon.
ROGER S. GREENE, Judge pro tem.   Reversed.

*W. T. Scott,* and *Frank A. Steele,* for appellants.

*M. L. Baer,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—This was a hearing on certiorari.   A
motion to quash the writ and the merits of the cause
came on for hearing before the lower court by consent
upon a single argument.   The case involves the va-

lidity of the levy and collection of a reassessment for
the grading and improving of Division street in the
city of Seattle. The mode of making payment for
the improvement is the mode of immediate payment
defined in art. 8 of the charter of the city of Seattle,
as amended and now in force, subject to the provisions
of the act of the legislature approved March 9, 1893
(Laws 1893, p. 226), entitled "An act relating to and
authorizing the collection of assessments for local
improvements by a new assessment or reassessment
of the cost and expense of making same in cities and
towns, and declaring an emergeney." Under the law
as it existed prior to the act of 1893, it was necessary
before the council acted to have a certain petition, by
the land owners affected by the improvement, pre-
sented for their consideration. It appears from the
the return that no such petition was presented. The
superior court of King county had declared the assess-
ment void under the law as it existed prior to the en-
actment of 1893, and no appeal from such judgment
had been taken. Subsequent to such enactment, how-
ever, a reassessment was made and this action was
brought to set aside the subsequent assessment made
by the city. On the trial of the cause the presiding
judge overruled the motion to quash the writ and gave
judgment setting aside and quashing the assessment
made against the property of the plaintiff. From
such judgment an appeal was taken to this court.

Many preliminary questions are discussed on this
appeal, relating to the mode of procedure, the right
of the plaintiff to invoke the writ of certiorari, etc.,
but with the view we take of the merits of the case it
will not be necessary to discuss these preliminary
questions. It seemed to have been the view of the
learned judge who tried the case below that the cura-

tive act of 1893 did not authorize a new assessment or
reassessment in any case where the original assess-
ment was absolutely void for lack of any jurisdictional
prerequisite, and that inasmuch as the city charter pro-
visions were such as to require that the assessment,
where the mode of payment was to be by immediate
payment, should be by petition signed by the owners
of more than three-fifths the number of front feet of
the abutting property, and if such petition was nec-
essary to give the common council jurisdiction to
make the original assessment, it was necessary to
have preceded the reassessment in order to make it
valid, and that it was not the intention of the legis-
lature in the new act to do away with the requirement
of the petition, and that on constitutional grounds
work done under an absolutely void assessment could
not, by reassessment or in any other way, be imposed
by the city upon the property benefited.

We think the learned judge was mistaken, both as
to the intention of the act and the power of the legis-
lature to pass such an act. It seems plain to us from
the reading of the statute, that the legislature intended
to provide for a reassessment in all cases where the
assessment had been held to be void, whether for ir-
regularities or for want of prerequisites which went
to the jurisdiction of the council to levy the assess-
ment and to order the work done.

The language of the statute is that:

"Whenever an assessment for laying out, establish-
ing, . . . paving, repaving, . . . graveling,
regraveling, . . . or for any local improvement
which has heretofore been made or which may here-
after be made by any city or town, has been or may
be hereafter declared void, and its enforcement under
the charter or laws governing such city or town re-
fused by the courts of this state, or for any cause

whatever has been heretofore or may be hereafter set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court, the council of such city or town shall by ordinance, order and make a new assessment or reassessment upon the lots, blocks or parcels of land which have been or will be benefited by such local improvement." etc.

This language seems to clearly contemplate a case where there was no jurisdiction in the city council to order the improvements or make the assessments, which is the kind of a case that the courts would declare void. But to put the question beyond peradventure, the legislature, in expressing the intent of the act (Laws 1893, p. 228, § 6), says:

"It being the true intent and meaning of this act to make the cost and expense of all local improvements payable by the real estate benefited by such improvement by making a reassessment therefor, notwithstanding that the proceedings of the common council or board of public works or any of its officers may be found irregular or defective, whether jurisdictional or otherwise."

And it further provides that:

"The fact that the contract has been let or that such improvements shall have been made and completed in whole or in part, shall not prevent such assessment from being made."

So that it seems the intention of the legislature to provide for cases where there was no jurisdiction in the common council to act is too plainly expressed to be misunderstood. Nor is there anything in the act to indicate that, before this reassessment can be made, the prerequisite to action under the old charter shall exist under the new; that is to say, there is no intimation that before an assessment can be made under the new act, the petition provided for by the old law

shall be presented.   The legislature could itself have made this assessment directly, without any reference at all, but it saw fit to delegate the authority to the council, and it could delegate it with all the power which the legislative body possessed.

The rule deduced from all the authorities seems to be in substance that if the legislature had the power in the first instance to make valid the assessment without the requirement which was disregarded by the authorities, it can by legislative enactment dispense with that requirement in providing for a new assessment; and there can be no question but that under the almost unlimited exercise of authority on questions of tax or assessment, the legislature in the first instance could have provided that this work should be done and the assessment made without the requirement of any kind of a petition.   It seems to be well established by the authorities that the fact that a judgment of a court has pronounced an assessment void will not preclude the legislature from making provision for a reassessment on such property, if it had the original power to provide for such assessment. The only restriction on the powers of the legislature in our state is that the taxes must be uniform, and the further restriction that the person whose property is assessed must have notice.  , Of course, this is not parallel with a case where a judgment was held void because there was no service, or cases of that kind which would clearly fall within the constitutional inhibition of taking property without due process of law and therefore the legislature would not have had the power to dispense with that requirement in the first instance.

The retrospective power of the legislature over subjects of assessments and taxation where past proceed-

ings have proved defective or irregular by reason of
the want of power in local boards to act, or by reason of
non-compliance with existing provisions of law, is well
established by the authorities. One of the leading cases
on this question is that of *Mills v. Charleton*, 29 Wis.
400 (9 Am. Rep. 578), where it was decided that the
reassessment of a tax under a new grant of authority
is not a re-opening of the judgment by which the
former assessment was declared invalid and proceed-
ings thereunder restrained; and that it did not conflict
with the general rule that a statute which operates to
annul or set aside the final judgment of a court of
competent jurisdiction and to disturb or defeat vested
rights is void; the distinction being that the general
rule had reference to matters of mere private right.
This case involved a curative or remedial statute,—
and we use the terms interchangeably,—similiar in
character to the statute under discussion. The court,
after arguing other propositions, approaches the one
under discussion here in the following language :

"The other principal question involved in this case
is one which has become trite, and scarcely an open
one, by repeated arguments and decisions in this court
as well as in the courts of other states. It relates to
the retrospective power of the legislature over the
subjects of assessment and taxation, where past pro-
ceedings have proved defective or irregular, either
for want of power in the local boards or officers or
by reason of non-compliance with some existing pro-
vision of law. The cases in which this question has
arisen and been decided are quite numerous and al-
ways with one result. The authority of the legislature
in this respect has always been affirmed, where the
subject acted or operated upon was purely and exclu-
sively one of taxation and assessment, and concerned
only the taxing power." "The principle," says the
court, "upon which these and other similar decisions

28 — 13 WASH.

rest, is, that the taxing power, when acting within its legitimate sphere and unrestrained by positive constitutional provision, is a far reaching and unlimited power, which knows no stopping place nor moderation of force until it has accomplished the purpose for which it exists, namely, the actual enforcement and collection of the tax. It moves constantly forward to its object until that is accomplished, and, if turned aside by any obstacles or impediments, may return again and again to the same tax or assessment until, the way being clear, the tax is paid or the assessment collected. Such is the force of this power, or of the sovereign body which exercises it, that it may remove all obstacles and never cease to act until it has attained the appointed end for which it was delegated;" citing with approval: *Grim v. School District,* 57 Pa. St. 433 (98 Am. Dec. 237), and *Musselman v. Logansport,* 29 Ind. 533.

In these cases it was decided that if the legislature has antecedent power to authorize a tax, it can cure, by a retroactive law, an irregularity or want of authority in levying it, though thereby a right of action which vested in an individual should be divested.

The same principle was announced by the supreme court of Minnesota in the case of *St. Paul v. Certain Lots,* 6 N. W. 424 (*S. C. City of St. Paul v. Mullen,* 27 Minn. 78). The curative statute in that case was no stronger than ours and it provided and authorized the common council to direct a new assessment or reassessment when judgment is denied on the original assessment, or the assessment set aside or declared void for any cause whatever.

This question has been before the supreme court of the United States in *Spencer v. Merchant,* 125 U. S. 345 (8 Sup. Ct. 921). There an assessment had been made and a portion of the lots upon which the assessment was made successfully contested the validity of the

assessment; and the unpaid part of the assessment, being something over $40,000, was returned for five years as uncollected by the treasurer of Kings county, New York, to the comptroller of the city. This assessment was made under the statute of 1869. In 1881 the legislature passed a curative act and directed the board of supervisors of Kings county to levy on the assessment roll of the town upon those certain lots a sum equitably apportioned among the several parcels comprising said lands, including the interest which had accrued. This levy was contested, was held good by the court of appeals of New York, and was finally taken to the supreme court of the United States, where it was held that the act of 1881 determined absolutely and conclusively the amount of tax to be raised and the property to be assessed and upon which it was to be apportioned; that each of these things was within the power of the legislature whose action could not be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason. It decided that the legislature might commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but that it was not bound to do so, and could settle both questions for itself, and when it did so its action was necessarily conclusive and beyond review; that the power of taxation is unlimited, except that it must be exercised for public purposes; citing *Weismer v. Village of Douglas*, 64 N. W. 91 (21 Am. Rep. 586), and approving the words of Chief Justice CHASE, in *Veazie Bank v. Fenno*, 8 Wall. 533, that, "the judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of

the legislature is not to the courts, but to the people by whom its members are elected."

In *Williams v. Supervisors of Albany,* 122 U. S. 154 (7 Sup. Ct. 1244), the supreme court decided that the mode in which property should be appraised, by whom and when that shall be done, what certificate of their action shall be furnished by the board which does it, and when parties may be heard for the correction of errors, are all matters within legislative discretion; and it is within the power of the state legislature to cure an omission or a defective performance of such of the acts required by the law to be performed by local boards in the assessment of taxes as could have been in the first place omitted from the requirements of the statute or which might have been required to have been done at another time than that named in it.

In *In re Van Antwerp,* 56 N.Y. 261, it was held that the taxing power of the legislature for public purposes is unlimited, except as specifically restrained by the constitution; that where an assessment for municipal improvements is irregular the legislature may itself make, instead of authorizing, a reassessment. If this be true it certainly destroys the objection that the legislature in this instance did not have power to provide that the assessment could be made by the city council without the presentation of a petition of the property owners, which was provided for by the law under which the first assessment was made. To the same effect are: *Howell v. Buffalo,* 37 N. Y. 267; *McMillen v. Anderson,* 95 U. S. 37; *State, ex rel. Doyle, v. Newark,* 34 N. J. Law, 236.

It is announced by Mr. Cooley in his work on Constitutional Limitations (5th ed., p. 593), that:

"The power to impose taxes is one so unlimited in

force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in the discretion of the authority which exercises it."

A general review of this chapter conclusively shows that the overwhelming weight of authority, in fact, all authority, goes to the extent of according this power to the legislature, and the courts will not inquire into the policy of the tax, or undertake to limit the author- ity of the legislature, so long as it is exercised within the constitutional limitations and so long as it appears that it is a proper exercise of a taxing power.

A defense of the law announced by the courts on this question is made by Cooley in his work on Taxa- tion (2d ed., p. 309), where he insists that this power is not inconsistent with reason or fair dealing, because the reassessment is only for the purpose of enforcing against the delinquent tax-payer a duty which he was likely to evade by reason of the non-feasance or mis- feasance of the officers who ought to have enforced it and when the new proceedings will give him the same opportunity to be heard that was given him in other cases, and will be conducted on principles that operate generally, he has no reasonable ground of complaint; and he sums up the law and announces the particular cases where the legislature may provide a reassess- ment, in cases where the first assessment has been held to be void, and after giving some instances where the new assessment cannot be provided for, as where the tax itself was originally void by reason of having been levied for an illegal purpose, he concludes:

"And here it may be observed that a judicial de- cision against the first proceedings, if based upon errors and defects merely, and not upon the vicious nature of the tax itself, is not a bar to a reassessment. Such a decision merely points out the error, and the reassess-

ment may be of all others the most proper and effectual way of correcting it."

On this proposition, however, the authorities are so uniform that a further citation would be without benefit. It appears in this case that the subject of the assessment was a subject over which the legislature had proper control; that the new assessment law provides for notice to the property owners; that no constitutional limitation has been invaded; and under the plain provisions of the statute we think the new assessment provided for contemplated just such a case as the one at bar; that, so far as the record shows, the law has been substantially complied with.

We think there is nothing in the contention that the city is not a party in interest here, for whatever its ultimate responsibility may be in cases of this kind, it is primarily responsible for the collection of this assessment.

Believing that the court erred in overruling the motion to quash the writ, the judgment will be reversed and the case remanded with instructions to grant the motion to quash the writ.

HOYT, C. J., and ANDERS and GORDON, JJ., concur.
SCOTT, J., dissents.