[No. 3746.    Decided June 23, 1902.]

J. R. LEWIS, *Appellant,* v. CITY OF SEATTLE, *Respondent.*

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — REASSESSMENTS — PROCEDURE.

The fact that the act relating to reassessments for the purpose of paying the costs of local improvements (Laws of 1893, p. 226), declares in §§ 1 and 2 thereof that the city council shall by ordinance order and make the reassessments does not require the amount of the assessments charged against each lot to be fixed in the first instance by the city council, since the same act directs the board of public works or other proper authority of such city or town to make a new assessment roll in an equitable manner with reference to benefits received and certify the same to the city council, and by § 5 of the act it is provided that the council shall appoint a time for hearing objections to such assessment and shall have power to correct, confirm or set it aside.

SAME — INVALIDITY OF CHARTER PROVISIONS — METHOD PROVIDED BY STATUTE.

The fact that the system for assessing property for local improvements provided by the charter and ordinances of a city was unconstitutional and void would not render nugatory a reassessment made under Laws 1893, p. 226, which requires the public authorities to proceed "as near as may be in accordance with the law in force at the time such reassessment is made," since the reassessment act of 1893 furnishes a complete scheme for a reassessment and § 10 of the act provides a city may pro-

28  639
31  164
28  639
35  372
35  375
28  639
40  149
28  639
42  271

ceed either under the act or under its charter, thus providing an ample scheme, in spite of the invalidity of the city "law in force."

### SAME — IMPROVEMENTS COMPLETED IN TWO DIVISIONS.

The fact that after a street improvement was begun a portion of it was stopped by injunction, and the improvement of two of the intermediate blocks of the street was discontinued, would not invalidate a reassessment for the completed portions which apportioned the charges as if the improvement were continuous, if the charge made against each lot was according to the benefits received by it, and the party complaining was unable to show actual injury to himself resulting from the methods pursued in making the improvement and the reassessment therefor.

### SAME — LIMITATIONS.

There is no statute limiting the right of a city to levy a reassessment after the original assessment has been declared void.

### SAME — CHARGING COST OF INTERSECTING STREETS TO PROPERTY BENEFITED.

Under Laws 1893, p. 228, § 6, empowering a city to assess the property benefited "for an amount which shall not exceed the actual cost and value of the improvement," a city is authorized to include the cost of intersecting streets and alleys in the charge to the property benefited, and its discretion in that respect is not reviewable in the courts.

### SAME — INCLUSION OF INTEREST.

In making a reassessment upon property benefited by a local improvement, a city is authorized by Laws 1893, p. 229, § 6, to include in the assessment the interest accumulated upon the original cost of the work. (REAVIS, C. J., and ANDERS and WHITE, JJ., dissent).

### SAME — JURISDICTION OF COUNCIL TO ADD INTEREST OMITTED FROM ROLL.

Under Laws 1893, p. 228, § 5, empowering the city council to correct omissions in a reassessment roll upon the hearing before it, after the same had been certified by the board of public works, the council has authority to increase the assessments so as to include accumulated interest although such interest had not been mentioned in the ordinance ordering the reassess-

ment, nor included in the roll as returned by the board of public works.

LIMITATIONS — COMMENCEMENT OF ACTION — PRESUMPTION AS TO DATE.

Where the file marks on a complaint show that the action was commenced within the statutory period, while the appearance docket would indicate it had been commenced one day later, in the absence of any showing of the true date, the court will presume, as against the statute of limitations, that the certificate on the complaint shows the true date.

Appeal from Superior Court, King County.—Hon. WILLIAM HICKMAN MOORE, Judge. Affirmed.

*Greene & Griffiths,* for appellant.

*Pratt & Riddle* and *W. E. Humphrey,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—On May 3d, 1890, the city council of the city of Seattle by ordinance ordered that portion of Jefferson street in the city of Seattle lying between Third street and Broadway to be graded and otherwise improved according to certain plans and specifications theretofore prepared by the city engineer, and adopted by the city council. Sealed bids were advertised for and received, and the contract for the work was let to the lowest responsible bidder. After the letting of the contract, and after the contractor had entered upon the work, the city was enjoined, at the suit of a property holder, from prosecuting the work along that part of Jefferson street lying between Eighth street and the alley between Eighth and Seventh streets. This injunction made it impracticable to grade the street as planned between the alley and Sixth street, whereupon the work was abandoned between Eighth and Sixth streets, but completed according to the original plans between Third street and Sixth street and between

Eighth street and Broadway. Prior to letting the contract, the city council created an assessment district, including therein such lots and blocks as they deemed would be affected by the improvement, and on the completion of the work assessed these lots and blocks to pay the cost of the improvement. This assessment was declared void, by a judgment of the superior court of King county, on February 2, 1897. On February 6, 1899, the city council by ordinance ordered a reassessment "upon the lots, blocks, or parcels of land which have been benefited by the improvement of Jefferson street . . . to the extent of their proportionate cost, expense and value thereof;" pursuant to which the board of public works made a new assessment roll of the property benefited, in which they assessed the original cost of the improvement to the lots abutting upon the street "in an equitable manner with reference to benefits," and certified the same to the city council. This roll was, after notice and hearing, duly approved and confirmed by ordinance passed July 5, 1899, which ordinance also provided that the amount assessed should bear interest at 10 per centum per annum from February 28, 1891, the date of delinquency of the original assessment. The appellant is the owner of certain lots abutting upon Jefferson street, which were assessed under the reassessment proceedings, and, with others, filed objections to the regularity and validity of the proceedings with the city council, raising questions both of fact and of law. Only the legal questions were urged on the hearing before the council, which being overruled appeal was taken to the superior court of King county. That court confirmed the reassessment, and this appeal is from the judgment entered therein.

It is first objected that the ordinance authorizing and directing the reassessment was insufficient for that pur-

pose in that it did not comply with the requirements of §§ 1 and 2 of the act of 1893 (Laws 1893, p. 226), relating to reassessments to pay the costs of local improvements. It is urged that, inasmuch as the sections cited provide that the city council "shall by ordinance order and make" a reassessment, the city council must, in the initial ordinance, not only direct such assessment to be made, but must fix the amount of the charge that is to be assessed against each particular lot and parcel of land; that the power of the board of public works or other proper authority of the city is confined by the statute to the making of an assessment roll in conformity with the ordinance. However plausible this contention may appear from the actual wording of the statute, it is clear that such is not its intent and meaning. The statute, it is true, provides that the city council shall "order and make" a new or reassessment, but it directs that "to this end the board of public works or other proper authority of such city or town shall make a new assessment roll in an equitable manner with reference to the benefits received, as near as may be in accordance with the law in force at the time such reassessment is made," and shall certify the same to the city council. The act further provides that, upon the receipt of the assessment roll so made, the clerk of such city or town shall give notice by publication in the official newspaper of such city or town of a time when the council will hear and consider objections to the same by parties aggrieved by such reassessment; and by § 5:

"At the time appointed for hearing objections to such assessment the council shall hear and determine all objections which have been filed by any party interested, to the regularity of the proceedings in making such reassessment and to the correctness of the amount of such reassessment, or of the amount levied on any particular lot or

parcel of land; and the council shall have the power to adjourn such hearing from time to time, and shall have power, in their discretion, to revise, correct, confirm, or set aside, and to order that such assessment be made *de novo,* and such council shall pass an order approving and confirming said proceedings and said reassessment as corrected by them, and their decision and order shall be a final determination of the regularity, validity and correctness of said reassessment, to the amount thereof, levied on each lot or parcel of land. If the council of any such city consists of two houses the hearing shall be had before a joint session, but the ordinance approving and confirming the reassessment shall be passed in the same manner as other ordinances." Session Laws 1893, p. 228.

Manifestly the procedure here contemplated is that followed by the city officers in the case before us. It contemplates that the city council shall by ordinance order a reassessment; that the board of public works shall make out the reassessment roll, in which they shall assess the cost of the work, or so much thereof as can lawfully be so assessed, to the lots and parcels of land benefited according to benefits, and certify their proceeding to the city council, which then has the power to make such changes and alterations as the justice of the case may require, or reject the roll altogether and order another assessment to be made. No other construction will give force and effect to all of the provisions of the act, or render it capable of practical operation. Certainly, the board of public works could not apportion the cost in an equitable manner according to benefits if they must blindly follow an apportionment made by the city council.

It is next objected that the city council was without power to order or make this reassessment because, it is contended, there was no valid law in force in the city authorizing an assessment of property to pay the cost of a street improvement. This contention has its basis in the

fact that the first section of the act of 1893 requires the board of public works or other authority, when making the reassessment roll, to proceed "as near as may be in accordance with the law in force at the time such reassessment is made." The argument is, that the phrase, "law in force," must mean the city charter and the ordinances passed thereunder which provide the general scheme for street-improvement assessments; and as those in force in the city of Seattle at the time the ordinance was passed ordering the reassessment in the present case provided for an assessment under what is commonly known as the front-foot rule, instead of an assessment according to benefits, they were unconstitutional and void, and hence there was no law in force in that city under which any valid assessment could be made. Conceding that the scheme provided by the charter and ordinances of the city for an original assessment is obnoxious because of the reason stated, and that it had no charter or ordinances authorizing a reassessment, it is manifest that the act of 1893 was intended to meet these very objections and to permit a reassessment to be made, no matter what may have been the defect in the law which rendered the first reassessment uncollectible. *Frederick v. Seattle*, 13 Wash. 428 (43 Pac. 364). It will be noticed that this section of the act makes it imperative on the part of the board of public works or other authority making the reassessment, to assess the property benefited according to benefits, regardless of what may be the requirements of the charter and ordinances of the city in that respect, and that to this end they are required to pursue the law in force only "as near as may be." It would seem, therefore, that had the statute intended to make it mandatory in all cases to pursue the charter and ordinances of the city in making a reassessment, it would be a sufficient compliance with the statute to follow

them only in those provisions which do not conflict with the
statute. But the statute itself makes it clear that this was
not its purpose. In the sixth section of the act it is provid-
ed that no omission, failure, or neglect of any officer of the
city to comply with the provisions of the law in force shall
prevent a reassessment, and in the same section it is de-
clared to be the true intent and meaning of the act to make
the cost and expense of all local improvements payable by
the real estate benefited by the improvement, notwithstand-
ing the proceedings of the common council or board of pub-
lic works or any of its officers may be found irregular or de-
fective, "whether jurisdictional or otherwise;" and by the
tenth section it is provided that the act shall not be con-
strued as repealing the provisions then existing in any city
charter for the making of new assessments or reassessment,
but shall be construed as providing a concurrent remedy in
such cases, and that any city whose charter provides for a
reassessment may proceed under the charter or under the
provisions of the act. In other words, the statute was in-
tended to, and does of itself, furnish a complete scheme for
a reassessment, and such reassessment can be made in a
proper case, under the statute, whether the charter of the
city or its ordinances authorize a reassessment or not.
Where the city charter and ordinances do provide for a
reassessment, the city authorities may elect whether they
will follow such charter and ordinances or whether they
will follow the statute, but it was not intended to say that
there must be found in the charter and ordinances of the
city authority to make a reassessment before the city can
pursue the scheme provided by the statute. In the case be-
fore us, the city authorities followed the statutory scheme,
and hence the question is immaterial what may have been
the provision of the charter or ordinances on the matter.

It is urged that *Cline v. Seattle*, 13 Wash. 444 (43 Pac. 367), is contrary to this view of the statute. It is true that the court in that case did say that, "if the reassessment could be made at all, it could only be made under the provisions of the charter in force at the time it was made," but the court was speaking of a reassessment attempted to be made under a charter amendment authorizing a reassessment, and to the question whether a change in the assessment district from that originally established voided the reassessment. The question whether the city authorities, in the absence of charter provisions and ordinances, could reassess under the act of 1893, was not before the court, and was not intended to be denied.

It is next said that the reassessment is contrary to the act of 1893 and the charter of the city because it is an assessment for two distinct improvements. · It is meant by this that, because the judgment of the superior court enjoined the improvement as originally planned on a part of the street, and the city thereafter performed the work on each side of the enjoined portion, the work became two separate and distinct parts, having no such connection with each other as to authorize the two portions to be assessed as one district. Undoubtedly, it would be a sufficient ground for directing a modification of the assessment were it shown that the improvement of the one part in no wise benefited the property adjacent to the other, and that the method of apportioning the cost pursued caused a part of the property to be assessed at a higher rate than it would have been had the cost of that part of the work which conferred the benefit upon it been alone assessed to it; but the fact that the assessment was apportioned as if the improvement were continuous will not of itself render the assessment void. The nature, character, and extent of an improvement must

rest within the discretion of the city council. The law fixes no metes or bounds in this respect, beyond which it cannot go, further than it may not permit a gross abuse of such discretion. Whether, therefore, the work as ordered and performed consists of disconnected portions, or of a continuous portion, of a street, or whether it consists of work done upon different streets, furnishes no ground of complaint to the individual property holder so long as the work confers a benefit upon his property, and he is not charged with a cost exceeding such benefit. Stated in another way, this is not a matter going to the jurisdiction of the council to make the improvement; at most it is but an erroneous exercise of jurisdiction, available to a complainant only when he shows a resulting injury. This court has repeatedly held that all questions affecting the assessment proceedings, not going to the jurisdiction of the municipality to make the assessment, must be taken before the city council on the hearing pending the confirmation of the assessment proceedings by that body, and appealed therefrom to the courts, before the courts have authority to inquire as to mere error therein. See the cases collected in *Potter v. Whatcom,* 25 Wash. 207 (65 Pac. 197). The logical deduction from this principle is that the courts regard errors in the decisions and orders of the city council, when exercising this power, as it regards errors in the judgments of tribunals exercising judicial functions; that is to say, where the city is shown to have acquired jurisdiction of the subject-matter over which it is acting, errors warranting a modification or annulment of its decisions and orders must be errors affecting some substantial right of the complaining party which operate to his injury. This principle was applied by this court in *Spokane v. Browne,* 8 Wash. 317 (36 Pac. 26), where the validity of a street

assessment was in question. It was there contended that the city had no right to change the method of making and collecting the assessment, from the manner provided by ordinance at the time the work was done, to another and different method, but that the property holder had a vested right to have the assessment made according to the provisions of the ordinance existing at the time the improvement was ordered. The court held there was no such vested right in the property holders, using this language:

"What was such vested right? Not that the assessment should be collected in any particular manner, so far as property owners were concerned, but rather that they should not be called upon to pay in excess of a certain sum. It does not appear in this case that the respondents have been in anywise injured, or that they have been called upon to pay in this action or by this levy any greater sum than they would have been required to pay in the original scheme of assessing according to valuation. Nor does it appear that they have been asked or required to make any earlier payment. In our opinion, in order for them to attack the assessment it must appear that it has worked to their injury. Otherwise they have no right to complain, for the manner of making the assessment and collecting the same is otherwise of no consequence to them."

The statute of 1893 (§ 9) also provides that the judgment of the court on an appeal "shall be either to confirm, modify or annul the assessment in so far as the same affects the property of the appellant." It seems plain that, if any such power needs to have been conferred by the statute, the power here given to modify contemplates that the court shall not dismiss or annul the assessment for errors which do not go to the jurisdiction of the city council to make the assessment, but shall, for such errors as are prejudicial and require a modification, send the proceedings back to that body, with instructions to correct the er-

rors, and proceed with the collection of the assessment after the errors have been corrected. ' This being true, it must follow that errors which do not prejudice require no modification of the assessment; and that a party complaining of errors in the proceedings must show an actual injury to himself resulting from such errors before the court is required or authorized to interfere. In this case, the appellant does not contend that any actual injury was caused him by this particular action on the part of the city council. Its action was, therefore, if error at all, error without prejudice, and requires no modification.

The next contention is that the right of the city to levy the reassessment was barred by the statute of limitations. The original assessment was declared void by the judgment of the superior court on February 2, 1897. The ordinance ordering the reassessment was passed on March 6, 1899. There is no special statute limiting the time for making a reassessment after the original assessment has been adjudged void, but, if it be admitted that the statute limiting the time in which an action may be commenced to enforce an assessment after it has been levied applies to the right of the city to make the assessment, the statute had not run between these dates, as the right of action is limited to ten years. Laws 1895, p. 270; *State ex rel. Hemen v. Ballard,* 16 Wash. 418 (47 Pac. 970); *Bowman v. Colfax,* 17 Wash. 344 (49 Pac. 551); *Fogg v. Hoquiam,* 23 Wash. 340 (63 Pac. 234). Counsel, however, make the further point that more than two years elapsed between date of delinquency of the original assessment and the time the action was instituted to enforce its collection, which resulted in the adjudication that the assessment was void. In the light of the cases last above cited, it would seem that this, if the record bore out the contention, would not be ma-

terial, but the record is not certain as to the date on which
the action was actually commenced. The file marks on
the complaint show that the action was commenced within
the statutory period, while the appearance docket would in-
dicate that it had been commenced one day later, and no
evidence was introduced tending to show the true date.
The statutes, as they then existed, provided that an action
should be commenced by filing a complaint, and that the
clerk should indorse on the complaint a certificate of the
filing thereof, showing the date of such filing; while an-
other section required the clerk to keep an appearance
docket, in which he was required to note all appearances in
an action and the time of filing all pleadings therein. The
court will presume, as against the statute of limitations,
where these dates disagree, and no showing is made of the
true date, that the certificate on the complaint shows the
true date. The statute of limitations cannot, of course,
be deemed as running during the time in which the city was
attempting to enforce the original assessment.

The city included in the assessment the cost of improv-
ing intersecting streets and alleys. It is contended that this
should have been deducted, and that the amount assessed
against the appellant's property is proportionately too
large for that reason. The act of 1893 (§ 6) empowers the
city to assess the property "for an amount which shall not
exceed the actual cost and value of the improvement." The
authority here given is, we think, sufficiently broad to
authorize the city to include the cost of improving inter-
secting streets and alleys in the charge to the property
benefited, and whether it will do so or not is, therefore,
within the discretion of the city council to determine.
Being so, it is not reviewable here.

Lastly, it is said that the city council was without juris-
diction to provide for the collection of interest. The ques-

tion of its power to assess, to the property benefited in a
reassessment proceeding, the interest accumulated upon
the original cost of the work, is no longer an open one.
The statute (Laws 1893, p. 229, § 6) expressly provides
that it may do so, and in *Northwestern, etc., Bank v. Spo-
kane,* 18 Wash. 456, 459 (51 Pac. 1070), and *Philadel-
phia Mtge. & Trust Co. v. New Whatcom,* 19 Wash. 225
(52 Pac. 1063), we held the enactment valid. It is
further urged, however, that the power was erroneously
exercised in the case before us, to the prejudice of the
respondent, in that interest was not mentioned in the
initial ordinance, nor was it included in the roll as re-
turned by the board of public works. So far as the
ordinance is concerned, it followed the general language
used in the statute in its directing part, and was sufficient
to authorize an assessment to the property benefited of all
such sums as the statute authorized to be so assessed. If
it were necessary or proper to include interest in the roll
as prepared by the board of public works, it was within the
power of the city council, under the section of the statute
above quoted (§ 5) to correct the omission; and whether
it acted erroneously, to the prejudice of the property own-
ers, in so doing, would depend upon the manner in which it
was done. As to this manner the record is silent. Neither
the proceedings of the city council are in the record, nor
was it shown on the trial in the court below how the city
council proceeded in making the correction. As the city
had power to revise and correct the assessment roll, and the
power to provide for the payment of interest accumulated
upon the original cost of the work, the court will not pre-
sume, in the absence of a showing what its procedure was,
that it acted erroneously, to the prejudice of the property
holders.

. Finding no substantial error in the record, the judgment appealed from will stand affirmed.

DUNBAR, MOUNT and HADLEY, JJ., concur.

REAVIS, C. J., (dissenting).—We cannot assent to the imposition of ten per cent. interest per annum from February 28, 1891, the date of the original assessment, until the tax was delinquent under the reassessment. We think the validity of such an interest charge has not been directly before this court or decided in any former case. An examination of the two cases relied upon in the opinion of the majority, *Northwestern, etc., Bank v. Spokane,* 18 Wash. 456 (51 Pac. 1070), and *Philadelphia, etc., Trust Co. v. New Whatcom,* 19 Wash. 225 (52 Pac. 1063), shows that the question was not properly before the court in the first case mentioned. The suit in *Northwestern, etc., Bank v. Spokane, supra,* was to enjoin a sale under an assessment lien where the property owner had not appeared in the proceedings for assessment, and under the well-settled and uniform decisions of the court it was held that the validity, regularity, and amount of the assessment could not be questioned in such proceeding. The property owner there was not permitted to question the various items which made up the sum of the tax. It will thus be observed that the question of the interest charge was not involved in the case, and could not have been deliberately considered in the brief and incidental allusion to it in the opinion. *Philadelphia, etc.; Trust Co. v. New Whatcom, supra,* was a suit against the city for failure to include interest, from the date of the assessment in a reassessment. It appears in that case that the contract for the original improvement called for the payment of interest. The city did not include interest in the reassessment, and it was held liable for such failure upon the authority of *Northwestern, etc., Bank v. Spokane,*

*supra.* The case was questioned, and the court declined to follow it, in *Potter v. Whatcom,* 25 Wash. 207 (65 Pac. 197). And again, in *Tacoma Bituminous Paving Co. v. Sternberg,* 26 Wash. 84 (66 Pac. 121), it was said:

"The case of *Philadelphia Mortgage & Trust Co. v. New Whatcom,* 19 Wash. 225 (52 Pac. 1063), cited by counsel for appellant, has been virtually overruled."

We believe that the question of the right to impose interest upon the property owner in a reassessment from the date of the original assessment is for the first time directly raised in the case at bar. This is an appeal from the proceedings of the council in the reassessment which is provided for in §§ 8 and 9 of the reassessment law (Laws 1893, p. 226,) in which it is provided:

"Such appeal shall be tried in said court as in the case of equitable causes, except that no pleadings shall be necessary."

To avoid confusion, the distinction must be clearly kept in view between the question presented here directly on appeal in a trial *de novo* under the provisions of the reassessment statute, and any questions that may be raised by pleadings in the foreclosure of an assessment lien, or an action to enjoin the collection of an assessment. In the latter cases, the regularity and amount of the assessment cannot be questioned. On appeal, all these questions are presented anew to the court for determination. The principle upon which a reassessment is authorized is well-settled and universally recognized. It is that where the power is vested to make an original assessment, and the property assessed for benefits derived from the improvement, if the assessment be void for any informality or irregularity, the moral obligation still exists to pay for the benefits of the improvement, and, therefore, the legislature may by a positive act, authorize a reassessment for the

amount of the benefits. But the power to reassess goes no further. The reassessment law of 1893 provides in § 6 that, "such new assessment shall be for an amount which shall not exceed the actual cost and value of the improvement, together with any interest that shall have lawfully accrued thereon." The only mention of interest, it will be seen, is such as shall have lawfully accrued thereon, and it is upon this phrase "lawful interest" that the right to impose an annual and, in regard to time, indefinite, charge upon the cost and value of the improvement, is asserted here. It is rather difficult to perceive what was meant by "interest lawfully accrued thereon." The language, in its plain import, would not authorize the levy of any but lawful interest. Whether this has reference to the established legal rate, or rather to instances in which the city may have made a lawful contract to pay interest, is uncertain. It is elementary knowledge that interest can arise in two ways only,—either by contract between the parties, or as damages or penalty imposed by operation of law. It seems, in the case at bar, that the contract for improvement between the city and the contractor does not provide for interest, and that none of the assessment proceedings mention interest until the reassessment ordinance. But, whatever might be the liability of the city upon a contract to pay interest from the general fund, surely there is no semblance of contractual relations between the contractor who undertakes local improvements under the local assessment and the property owner, or between the city and the property owner. Can there be accrual of interest before any legal principal exists? The proceedings in the local assessment and reassessment are *in invitum*. The property owner has no volition, and is nowhere a party to the proceeding, and the tax or charge is imposed upon his

property by operation of law, and we think it may be asserted as a fundamental principle, from which there is found no dissent, that no duty, moral or legal, is imposed on the owner of property to pay a charge or tax until notice of the charge is given to him. What, then, is the case presented? There was no legal charge made against the property of appellant until the reassessment levy in 1899. There was no sum ascertained as the charge for the improvement of appellant's property until that date. The original assessment was void, and imposed no duty or obligation upon the taxpayer; in fact, it is because it was void that the reassessment could be made. The appellant could not pay any charge against this property. It was not ascertained. There was no one to receive it. A perpetual injunction was granted against the collection under the original assessment. The reassessment under the provisions of the statute is made without reference to any valuations in the original assessment. It is thus apparent that the appellant could not ascertain any charge against this property. He could not pay any such charge to any authorized collector. He had had no authorized notice that such charge was levied against this property. There had been no declaration of his delinquency in any form until something over eight years after the local improvement was made, when the onerous imposition of the penalty or interest nearly doubles the charge against his property.

It would seem, therefore, that if the reassessment act of 1893 intended to impose such penalty, such law is arbitrary, retroactive, and punitive in its nature, and should be held invalid because it clearly violates the fundamental rights of the appellant.

ANDERS and WHITE, JJ., concur in dissenting opinion.