[No. 10887. Department Two. April 7, 1913.]

*In re* LEARY AVENUE, SEATTLE.[1]

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—INITIATING ORD-INANCE—AMENDMENT—VESTED RIGHTS. Property owners have no such vested interest in the proceedings initiating a public improvement that the city could not amend the initiatory ordinance prescribing the special assessment district, so as to provide that the district shall be determined by the eminent domain commissioners, according to law, where there is no statute giving the property owners the right to protest against such improvement or to be represented by counsel in the initiatory condemnation proceedings, and the ordinance was amended prior to the notice of the assessment required by law to be given the property owners, who are then given an opportunity to make any objection to the assessment roll.

SAME — PRELIMINARY ORDINANCE—AMENDMENT — VALIDITY. An amendment of a specified section of an ordinance initiating a public improvement is not invalid by reason of the fact that such section had been previously repealed, where there was no doubt of its purpose to make the amendment a part of the original law; since an ordinance may be amended by adding a new section, which was the effect of the amendment.

Cross-appeals from a judgment of the superior court for King county, Mackintosh, J., entered October 14, 1912, setting aside an assessment roll for a local improvement, after a hearing before the court. Reversed.

*James E. Bradford, C. B. White,* and *M. S. Good,* for appellant.

*T. F. Bevington,* for respondents and cross-appellants.

*Farrell, Kane & Stratton,* for respondent Burke & Farrar.

*Kerr & McCord,* for respondent Seattle-Ballard Land Company.

[1]Reported in 131 Pac. 225.

FULLERTON, J.—In June, 1909, the city council of the city of Seattle, by Ordinance No. 21,303, duly enacted and approved, provided for the establishment of a public street and highway to be known as Leary avenue. The highway as laid out began in the northerly part of the city and extended in a southeasterly direction to a connection with certain other principal highways theretofore established by the city, the purpose of the highway being to furnish the residents of the part of the city through which it extended a more direct route on better grades to and from the business center of the city than the existing streets afforded them. The ordinance prescribed the width of the proposed street, and established the grades thereon. As laid out, the street extended in part along and across existing streets and highways, some of which were required to be widened and the established grades thereon to be changed to make them conform to the requirements of the new street and extended in part across lands in private ownership which had theretofore been laid out and platted into lots and blocks. The ordinance also directed that condemnation proceedings be begun to acquire the necessary right of way, and to ascertain the amount of damages the construction of the highway would entail upon holders of property taken and damaged by its construction. Proceedings for that purpose were thereafter begun and prosecuted to a conclusion by the corporation counsel, terminating in judgments in favor of such property holders totaling $351,000, the judgments being entered on January 17, 1911.

Section 5 of the ordinance provided:

"That the improvement provided for in this ordinance be paid for by special assessment upon property specially benefited, included in the following described district: [describing it.] Any part of the costs of said improvement that is not finally assessed against the property included in the above described district shall be paid from the general fund of the city of Seattle."

On February 10, 1911, the city council passed Ordinance No. 26,450 repealing § 5 above quoted. On April 6, 1911, it passed Ordinance No. 26,898 repealing Ordinance No. 26,450, the repealing ordinance. On May 22, 1911, it passed an ordinance amending § 5 of the original ordinance (No. 21,303) by making the same read as follows:

"Sec. 5. That the improvement provided for in this ordinance be paid for by special assessment upon property specially benefited in the manner provided by law. Any part of the costs of said improvement that is not finally assessed against the property specially benefited shall be paid from the general fund of the city of Seattle."

Subsequent to the passage of these ordinances, the city caused to be filed in the condemnation proceedings its supplementary petition, praying the court that an assessment be made for the purpose of raising the amount necessary to pay the compensation and damages awarded in that proceeding; praying further that the matter be referred to the eminent domain commission of the city of Seattle with instructions to make such assessment "in the manner provided by law." The court granted the petition, and thereafter the commission made an assessment upon the property they deemed to be specially benefited by the proposed improvement and returned their assessment into court in the form of an assessment roll. In making the assessment the commission found a much greater area of territory to be specially benefited by the improvement than that which was included in the district described in § 5 of the initiatory ordinance (No. 21,303), and assessed a considerable portion of the sum of money necessary to be raised on property lying outside the boundaries of such district.

On the return of the roll, a time was fixed for a hearing thereon, at which a number of persons whose property was affected by the assessment appeared and protested against the same, some of whom owned property outside of the district described in the initiatory ordinance, and some of

whom owned property within such district. After a hearing
on the protests, the court sustained the same as to all per-
sons owning property lying outside of the district described
in the initiatory ordinance, and overruled it as to those own-
ing property inside of such district, setting the assessment
made by the commission aside, and directing that a new
assessment be made in which the whole of the amount award-
ed in the condemnation proceeding, after deducting there-
from such proportion, if any, that the commission should
find to be a benefit to the city generally, be assessed upon the
district described in the initiatory ordinance. The city ap-
peals from the whole of the order, and the property owners
inside of the original district appeal from that part of the
order directing a further assessment to be made.

The statutes applicable to the questions suggested by the
appeals are found in Rem. & Bal. Code, §§ 7769, 7785, and
7790. These sections read in part as follows:

"Sec. 7769. When the corporate authorities of any such
city shall desire to condemn land or other property, or
damage the same, for any purpose authorized by this act,
such city shall provide therefor by ordinance, and unless
such ordinance shall provide that such improvement shall
be paid for wholly or in part by special assessment upon
property benefited, compensation therefor shall be made
from any general funds of such city applicable thereto. If
such ordinance shall provide that such improvement shall
be paid for wholly or in part by special assessment upon
property benefited, the proceedings for the making of such
special assessment shall be as hereinafter prescribed, in this
act."

"Sec. 7785. When the ordinance under which said im-
provement is ordered to be made shall not provide that such
improvement shall be made wholly by special assessment upon
property benefited, the whole amount of such damage and
costs, or such part thereof as shall not be assessed upon
property benefited shall be paid from the general fund of
such city or town, and if sufficient funds therefor are not
already provided, such city or town shall levy and collect a
sufficient sum therefor as part of the general taxes of such

city or town, or may contract indebtedness by the issuance of bonds or warrants therefor as in other cases of internal improvements."

"Sec. 7790. It shall be the duty of such commissioners to examine the locality where the improvement is proposed to be made and the property which will be especially benefited thereby, and to estimate what proportion, if any, of the total cost of such improvement will be of benefit to the public, and what proportion thereof will be a benefit to the property to be benefited, and apportion the same between the city and such property, so that each shall bear its relative equitable proportion, and having found said amounts, to apportion and assess the amount so found to be a benefit to the property upon the several lots, blocks, tracts and parcels of land, or other property in the proportion in which they will be severally benefited by such improvement: Provided, that the legislative body of the city may in the ordinance initiating any such improvement establish an assessment district and said district when so established shall be deemed to include all the lands or other property especially benefited by the proposed improvement, and the limits of said district when so fixed shall be binding and conclusive on the said commissioners: And provided further, that no property shall be assessed a greater amount than it will be actually benefited."

It seems to have been the opinion of the court below, and it is contended by the respondents in this court, that a municipality desiring to establish and improve a street must, in the ordinance initiating the proceedings, determine the manner in which it will provide the fund necessary to meet the cost and expense of the same; and if it determines in such ordinance that the whole or some part of such fund shall be raised by special assessment upon property benefited, it must provide in such ordinance whether it will leave the determination of the district to be assessed to the eminent domain commission provided by law to make the assessment or fix such district in the ordinance itself, and when it does so provide, no subsequent changes therein can be made which will affect the property interests of the individual. In sup-

port of these contentions, it is argued in the briefs that a property holder whose property is proposed to be assessed has an absolute right to appear before the body having authority to initiate the improvement and protest against the same, and to appear by counsel in the condemnation proceedings and be heard as to the justness of the claims of persons whose property is taken or damaged by the construction of the improvement, and "especially to object to and resist the entry of any agreed verdicts, which" are commonly entered in such causes.

We have not, however, been able to agree with the ruling of the trial court or with the contentions of the respondents. It is conceded by all authority that ordinances providing for public improvements may be amended so long as vested rights of individuals are not adversely affected thereby. This rule is self-evident, and follows from the very power the city has to enact ordinances. If, therefore, there were no vested rights affected by the amendment in this instance, and the amendment is sufficient in itself, there can be no valid objection to the amendment. The question then is, Did the amendment affect a vested right? It seems to us that it cannot be so held because of either of the reasons suggested by the respondents which we have mentioned. While property owners whose property is liable to be assessed for a contemplated improvement may have a natural right to peaceably assemble and protest against making the improvement, they have no absolute right to have their protest granted, or absolute right to maintain an action or proceeding in the courts based on the right if their protest is not granted. Rights of this character must be based upon some positive law or statute especially conferring the right, as it does not exist as part of the inherent law of the land. That there is no such law or statute is conceded; hence, it must follow, we think, that no vested right is denied by the failure to give property holders whose property is liable to be assessed to pay the cost of a contemplated improvement an

opportunity to protest against such improvement. Nor does a property holder whose property is liable to be assessed for a public improvement have a legal right to appear by counsel in the trial of the condemnation cases against the persons whose property will be taken and damaged by the making of the improvement. The duty of conducting these proceedings is devolved by statute upon the city, and since it has the responsibility of properly conducting the proceedings, it must follow that it, and it alone, has the lawful right to appear in such proceedings, or to be represented therein by counsel.

Nor do we perceive any valid reason which supports the contention. The city must, of course, initiate and carry on a public improvement in the manner prescribed by the laws governing the procedure, and it is an admittedly essential element of a valid assessment that the owners of property on which an assessment is proposed to be levied have notice of the assessment and an oportunity to be heard as to its validity and amount before it becomes a fixed charge upon their lands. But these mark the extent of their absolute rights, and since there is no statute or charter provision of the city forbidding the amendments of ordinances in the particular here attempted, it cannot be claimed, of course, that the amendment is in violation of the positive law governing the procedure; and since the amendment preceded the assessment and the notice to the property holders, it is equally plain that they are precisely in the same situation that they would have been in had the district described in the initiatory ordinance included all of the lands that are included in the roll returned by the board of eminent domain commission. They can make every objection against the assessment roll now they could have then made, and this being so, it is manifest, we think, that no vested right of the property holder has been invaded by the amendment of the ordinance.

The principal cases cited as sustaining the respondents' contention are *Spokane v. Browne*, 8 Wash. 317, 36 Pac. 26; *Cincinnati v. Seasongood*, 46 Ohio St. 296, 21 N. E. 630, and *Houston v. McKenna*, 22 Cal. 550. The case from this court announces the rule that the city could not change its method of assessment from a "plan according to valuation to the later one of per front foot" if such change in method caused the particular property holder to pay a greater sum than he would have been called on to pay under the valuation scheme, but that "otherwise they have no right to complain." The case from Ohio seems to be rested on the principle that the city was required by the law governing the procedure to determine in the initiatory ordinance under which of three several methods of making the assessment it would pursue, and that it was not permissible to thereafter change the procedure. The case from California was rested on an entirely different principle, namely, the inviolability of contracts.

It has not seemed to us that either of these cases announces a rule contrary to the rule necessary to be followed in order to uphold the assessment before us, although the reasoning on which the Ohio case is rested may seem to be so contrary. But that this court did not intend in the case of *Spokane v. Browne, supra*, to hold that the property holder whose property is liable to be assessed had a vested interest in the proceedings initiating a public improvement is evidenced by the later cases of *Frederick v. Seattle*, 13 Wash. 428, 43 Pac. 364, and *Cline v. Seattle*, 13 Wash. 444, 43 Pac. 367, and the cases following these decisions. In the first of these cases we sustained the constitutionality of the statute of 1893, which provided for a reassessment for local improvements where for any cause the original assessment is annulled, set aside, or declared void by the judgment of a court; saying in the course of the opinion, that it was within the power of the legislature to provide "for a reassessment in all cases where the assessment had been held

to be void, whether for irregularities or for want of prerequisites which went to the jurisdiction of the council to levy the assessment and to order the work done." In the second case, we reaffirmed the first decision, and held further that the reassessment could be made on property benefited although not included in the original district attempted to be assessed. This latter principle was again affirmed in *Bellingham Bay Imp. Co. v. New Whatcom*, 20 Wash. 231, 55 Pac. 630. The rule announced in these cases is clearly contrary to the idea that the property owner has a vested interest in the proceedings initiating a public improvement, or with the idea that an assessment district once established cannot be changed no matter how erroneous or inequitable it may be; for surely, if it is within the power of the legislature to call upon property benefited by a public improvement to pay the costs of making the same, by a proceeding initiated after the improvement has been completed under an entirely invalid proceeding, it cannot be that vested rights are conferred upon the owners of the property assessed by the proceedings initiating the improvement.

Other cases cited from this court and quoted from at length as sustaining the judgment of the trial court, are *Buckley v. Tacoma*, 9 Wash. 253, 37 Pac. 441; *Lewis v. Seattle*, 28 Wash. 639, 69 Pac. 393; and *State ex rel. Barber Asphalt Pav. Co. v. Seattle*, 42 Wash. 370, 85 Pac. 11. But without reviewing them at length, we think they contain nothing that militates against the rule we here announce. All that they contain pertinent to the case in hand is, that a city in making a street improvement, if it is to charge the cost to the property benefited, must substantially comply with the provisions of the law empowering it to make the improvement—a principle to which we may subscribe, we think, without holding invalid the proceedings followed by the city in the present instance.

It is further urged that there was no valid amendment of the statute, and hence any assessment attempted to be made

thereunder is invalid.    The precise contention is this: the
first repealing ordinance, which repealed § 5 of the initia-
tory ordinance, eliminated therefrom the section providing
that the improvement should be paid for by special assess-
ment on property benefited, which by the provision of the
statute above quoted relegated the cost to the general fund
of the city; that the second repealing ordinance, which re-
pealed the first repealing ordinance, did not have the effect
of reviving § 5 of the initiatory ordinance, so that the ordi-
nance then stood as if originally enacted without § 5, and that
in consequence the last ordinance, which purported to amend
§ 5 of the initiatory ordinance, was invalid for the reason
that there was no § 5 in the initiatory ordinance upon which
the amendment could operate.    But we have not been able to
agree with the contention.    An ordinance can be amended
by adding thereto an additional section as well as by amend-
ing an existing one, and we think that this is what the amend-
ment here questioned does in effect.    The references to the
ordinance amended are merely for the purposes of identifi-
cation, and if these references taken as a whole make clear
the purposes of the amendment it is sufficient, even though
in part they may be inaccurate or even misleading.    There
is no difficulty on this score with the present amendment.
It sets forth the title of the original ordinance and recites
that § 5 thereof is amended to read in a particular manner.
And notwithstanding we find on examining prior ordinances
that the § 5 which is purported to be amended has been re-
pealed, we know that the purpose of the law-making body was
to make this particular amendment a part of the original
ordinance.    There being no doubt as to its purpose, the
courts are obligated to give it effect.    It has been frequently
held that a statute unconstitutional because containing ob-
jectionable provisions in a particular section may be made
constitutional by an amendment removing the objectionable
provisions.    *State ex rel. v. Cincinnati*, 52 Ohio St. 419, 40
N. E. 508, 27 L. R. A. 737; *Allison v. Corker*, 67 N. J. L.

596, 52 Atl. 362, 60 L. R. A. 564; *Ferry v. Campbell,* 110 Iowa 290, 81 N. W. 604, 50 L. R. A. 92; *Lynch v. Murphy,* 119 Mo. 163, 24 S. W. 774. These cases are analogous to the case at bar. An unconstitutional section in an act is as much invalid as is a section that has been formally repealed, and if the one may be amended, it is difficult to conceive a reason that would deny the right of amendment to the other. We think therefore that the amendment is valid, and that the provisions of the ordinance as amended must be pursued in making the assessment to meet the costs of the improvement.

We have not noticed specially the contentions of the appellants other than the city. Their objections are determined, however, by what is said concerning the amendment to the initiatory ordinance, and require no further consideration.

The judgment appealed from is reversed, and the cause remanded with instructions to reinstate the roll returned by the eminent domain commission and proceed with a hearing thereon, after notice, in the manner required by law.

CROW, C. J., MAIN, ELLIS, and MORRIS, JJ., concur.