[No. 7592. Decided June 15, 1909.]

EMMA JOHNSON et al., *Appellants*, v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS—LOCAL IMPROVEMENT ASSESSMENTS—RE-ASSESSMENTS—EFFECT OF JUDGMENTS. A judgment holding an assessment for a local improvement valid as to certain tracts and invalid as to other tracts, does not prevent a reassessment of the whole district.

SAME—ADDITIONAL COSTS AND INTEREST. Upon a reassessment for local improvements, the city may include additional costs and accrued interest.

SAME—JUDGMENTS—RES JUDICATA. Judgments in actions declaring the validity or invalidity of local improvement assessments are not *res judicata* in another action upon a reassessment.

Appeal from a judgment of the superior court for King county, Tallman, J., entered June 10, 1908, after a hearing upon stipulated facts, affirming a reassessment upon property for a local improvement. Affirmed.

[1]Reported in 102 Pac. 448.

*C. M. Miller*, for appellants.

*Scott Calhoun, King Dykeman*, and *Howard A. Hanson*, for respondent.

MOUNT, J.—This appeal is from an order of the lower court affirming a reassessment made by the city council upon property benefited within a local improvement district in the city of Seattle. The facts are stipulated. It appears therefrom that, in 1904, the city of Seattle, by ordinance, provided for the paving of Harvard avenue and Harvard avenue north. The property benefited was designated as Improvement District No. 902. The streets were paved as provided, and an assessment roll was prepared by the city engineer, who assessed the lots benefited back to one hundred and twenty feet from the streets. This roll was referred by the city council to a committee for adjustment and equalization. This committee recommended that lots in blocks three hundred and sixty feet deep should be assessed to the center of the block, or one hundred and eighty feet, instead of one hundred and twenty feet deep as the roll was originally prepared, and the committee carried out the changes in red ink in the column marked "Changes ordered by the council." These recommendations were adopted by the council. The assessment roll was then referred back to the engineer to make the changes agreed upon. The original amounts charged against each parcel of property were entered in the roll in black ink figures, while the changes "ordered by the council" were entered in another column in red ink figures. The aggregate of these two columns was the same. In many instances the black ink figures were reduced by the red, and *vice versa*, so that in the aggregate the columns were equal. An ordinance was thereupon passed approving the assessment roll. This ordinance was numbered 11,343, and provided,

"That there be and is hereby assessed and charged against each parcel and lot of land and part thereof contained in said

local improvement district, as shown in said roll, the respective amounts therein set against each parcel and lot of land and part thereof, which said assessments shall be levied and collected in ten equal annual installments . . the whole amount hereby assessed and charged against the property in said local improvement district being the sum of $135,131.91."

The rate of assessment was stated by the front foot for subdivisions of each lot, and that rate was carried into the assessment roll. Certain appeals were taken from the order of the council to the superior court of King county, but the roll was confirmed by that court. Thereafter the roll was certified to the city treasurer for collection. This officer maintained that the red ink figures were approved by the ordinance, while some of the taxpayers whose assessments were lowered by the black ink figures, insisted that the ordinance approved the black ink figures and refused to pay the amount shown by the red ink figures. Large amounts were collected upon the basis of the red ink figures. Thereafter bonds as provided by the ordinance were issued for the unpaid portion of the assessments, and these bonds were tendered to the contractor who had made the improvement. This contractor, viz., the Barber Asphalt Paving Company, refused to accept the bonds, and brought an action in mandamus to compel the city to make a reassessment of the property. That action was prosecuted to this court (State ex rel. Barber Asphalt Paving Co. v. Seattle, 42 Wash. 370, 85 Pac. 11), and this court held that the assessment of the sixty-foot strip was void for want of notice to the property owners, but that the assessment was valid for the strip one hundred and twenty feet deep. The case was remanded with instructions to reassess the sixty-foot strip for the amount apportioned thereto, viz., $2,222.29, and accrued interest.

In the meantime one Frances E. Lester, a property owner, brought an action to require the city treasurer to accept full payment of her assessment based on the black ink figures in the assessment roll. Her property was a narrow strip with-

in the one hundred and twenty-foot limit. The black ink figures charged her parcel the sum of $2.34, while the red ink figures showed her assessment to be $76.23. The lower court sustained her contention that the one hundred and twenty-foot strip was shown by the black ink figures and was a valid assessment, and ordered the city treasurer to receive the $2.34 and cancel the assessment. Several other parties brought similar actions, with the same result. The city appealed to this court from the judgment in the *Lester v. Seattle* case, and we reversed the judgment of the lower court (42 Wash. 539, 85 Pac. 14), and said:

"The judgment entered by the trial court, however, not only cancelled the void assessment on the respondent's property and enjoined its collection, but it enjoined the city from 'collecting or attempting to collect any further amount on account of said improvement.' Since the city has the right to reassess the respondent's property for its due proportion of the cost of the improvement remaining unprovided for, that part of the judgment quoted is plainly erroneous, and the city should not be embarrassed by it in its effort to make a reassessment."

Thereafter the city passed an ordinance providing for a reassessment of all the property in the improvement district No. 902, and in pursuance of that ordinance a new assessment roll was prepared, and all of the property was included therein, both within the one hundred and twenty-foot limit and without that limit, sixty feet where blocks were three hundred and sixty feet deep. This roll was identical with the original roll as amended by the city council by the red ink figures hereinbefore mentioned. A day was set for hearing upon this reassessment roll and, after objections were overruled, an ordinance was passed approving the reassessment roll and levying an assessment on the property benefited according to this roll. This ordinance provided for credit to those who had previously paid, and also provided for interest upon assessments not paid upon the first assessment. An appeal was taken to the superior court, and the

reassessment was there affirmed and approved. This appeal is prosecuted from that judgment.

Appellants argue that the first assessment was a valid assessment as to the one hundred and twenty-foot strip, because it had been so held by this court in the *Barber Asphalt* case above mentioned, and therefore that the city had no authority to reassess, and that the reassessment is invalid because it provides for interest from the date of the original assessment; that the judgments above referred to are *res adjudicata* as to the rights of the parties who paid assessments as provided in those judgments.

All the difficulties in this case arise from the apparent conflict of the decisions of this court in the two cases above mentioned, viz., *State ex rel. Barber Asphalt Paving Co. v. Seattle,* and *Lester v. Seattle, supra.* In the first of these cases we held that the assessment as to the one hundred and twenty-foot strip was a valid assessment, and refused to avoid the whole assessment, but directed a reassessment of the sixty-foot strip outside of the one hundred and twenty-foot strip. A few days later, in the other case, which involved the same assessment and where a party who owned property within the one hundred and twenty-foot strip sought to compel the city to receive an assessment according to the original roll, and also obtained an order enjoining the city from collecting "any further amount on account of such assessment," we said:

"Since the city has the right to reassess the respondent's property for its due proportion of the cost of the improvement remaining unprovided for, that part of the judgment quoted is plainly erroneous, and the city should not be embarrassed by it in its effort to make a reassessment."

This statement clearly indicates that the city was authorized to reassess the property within the one hundred and twenty-foot limit to pay for the cost of the improvement. In the former case we held that the assessment of the one hundred and twenty-foot strip was valid; that it was only neces-

sary to reassess the sixty-foot strip. The authority of the city to reassess the whole improvement district was incidentally involved in the *Barber Asphalt Paving Co.* case, and upon that question we said:

"It [the city] contends, first, that the city exhausted its powers when it made the original assessment, and cannot now make a reassessment except by virtue of the act of 1893; and under that statute it cannot make a reassessment until the first assessment has been declared void by the judgment of a court, and here there has been no such judgment. But the city has power, by its charter and the general statutes and ordinances under which it originally proceeded, to make a valid assessment of property benefited to pay for a street improvement, and this power is not exhausted by any irregular, voidable, or void attempt at its exercise. In other words, its power to make a valid assessment does not depend on the statute of 1893. It has that power from the laws granting the power to make assessment, and no number of voidable or void attempts at its exercise destroys the power. True, the statute of 1893 is the only one operative in a certain class of cases; for example, where lapse of time or fundamental defects in the original law prevent a valid assessment under such original law, but it was not intended to cut off, and does not cut off, the right of a city to make a valid assessment where no other objection intervenes save the one that the city has already made an invalid or voidable attempt at an assessment."

This statement indicates that the city has authority to reassess the whole improvement district to pay for benefits to the property improved, and when considered in connection with what was said later in the other case, makes it clear that the city had such authority notwithstanding we had held a part of the assessment valid. The city also clearly had a right to include within the assessment additional costs and interest accrued. *Lewis v. Seattle,* 28 Wash. 639, 69 Pac. 393; *Young v. Tacoma,* 31 Wash. 153, 71 Pac. 742.

The cases brought under the old assessment above referred to are not *res adjudicata,* for the reason that the old assessment is superseded by the reassessment. Those cases

had reference to the old assessment, and were *res adjudicata* as to the questions raised therein; but they are not so as to the reassessment, further than a payment under the old assessment becomes by the ordinance a payment *pro tanto* under the reassessment. The assessment is identical with the red figures in the old assessment, and appears to be a fair assessment for benefits received by the property in the district. It is not claimed that the property improved has not received benefits to the amount of the reassessment.

The judgment of the lower court affirming the reassessment is therefore affirmed.

ALL CONCUR.