[No. 9590.    Department Two.    June 1, 1912.]

F. W. PEABODY *et al.*, *Respondents*, v. THE CITY OF
EDMONDS *et al.*, *Appellants.*[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENTS —LIMIT
—ESTIMATES. While the city is limited in making assessments for
benefits to the amount of the published estimates of such part of
the contemplated work as was actually done, it is error for the
court, on appeal from the. city council, to arbitrarily limit the
assessment by reference to a bid upon segregated items which did
not include necessary engineering work or overhaul at a certain
rate, both included in the estimates and evidently taken into con-
sideration by the city council in making the assessment.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered March 1, 1911, upon find-
ings in favor of the plaintiffs, in an action for an injunction,
after a trial to the court. Reversed.

*S. J. White*, for appellants.

*Coleman, Fogarty & Anderson*, for respondents.

CROW, J.—This action was commenced by F. W. Peabody
and thirty-five other· plaintiffs to enjoin the city of Ed-
monds, a city of the third class, and its treasurer, from col-
lecting a special assessment levied upon plaintiffs' real estate
to pay the cost and expenses of improving Dayton street.
The total assessment was $8,650.31. The trial court en-
joined the defendants from levying or collecting any greater
assessment than $4,375.75. The defendants have appealed.

The controlling question on this appeal is the maximum
assessment the city council has jurisdiction to levy on real
estate within the assessment district, under the rule an-
nounced by this court in *Chehalis v. Cory*, 54 Wash. 190,
102 Pac. 1027, 104 Pac. 768. On May 24, 1909, after the
property owners had petitioned for the improvement, engi-

[1]Reported in 123 Pac. 1018.

neers employed by the city filed with the city council the following itemized estimate of the cost of the improvement:

"The improvement of Dayton street from the Great Northern railroad to 9th street by grading will cost as follows:

| | |
|---|---:|
| 14,000 cu. yds. excavation @ 23c | $3,220.00 |
| Overhaul | 800.00 |
| 43,300 ft. B. M. for curbs & gutters @ $17.50 | 757.75 |
| 5,600 " " " " drain boxes " " | 98.00 |
| Clearing and grubbing | 300.00 |
| 43,200 B. M. Crosswalks @ $17.00 | 734.00 |
| Sidewalking 140,000 B. M. @ $17.50 | 2,450.00 |
| Engineering | 850.00 |
| Total | $9,209.75" |

On May 25, 1909, the council in regular and legal form adopted a resolution declaring its intention to improve Dayton street from the right of way of the Great Northern Railway Company to the east line of Ninth street, "by grading said Dayton street and building sidewalks thereon, on either side thereon, and by constructing gutters and drains thereon." The resolution further stated that the estimated cost and expense of the entire proposed improvement was $9,209.75, the total estimate of the engineers. On June 22, 1909, the city clerk published a notice to contractors, calling for bids which were to include sidewalk construction, and were to be filed on or before the hour of five o'clock p. m. of July 14, 1909. On July 6, 1909, a large number of the owners of property within the assessment district petitioned the city council to omit sidewalks from the improvement. Their petition was granted. Bids were presented, and on July 16, 1909, a contract was awarded to J. B. Otto, which did not include sidewalks or cross-walks, but which did provide for other work and material at the following prices:

| | |
|---|---:|
| "Clearing and grubbing | $595.00 |
| Earth work estimated at 114,111 cubic yards | 3,920.00 |
| Curbs and gutters estimated at 43,300 ft.B M. | 775.00 |
| Drain boxes estimated at 5,600 ft. B. M. | 98.00 |
| Overhaul one cent per station per cubic yard." | |

Work was completed in accordance with the contract, but no evidence was introduced to show what overhaul had been made, nor what engineering expenses had been incurred. These questions must have been passed upon by the city council when they approved the assessment after giving notice to the property owners. The question now before us is the limit of assessment which the city had jurisdiction to make. It is apparent that the estimated cost of $9,209.75 made by the engineers included $734 for cross-walks, and $2,450 for sidewalks, being a total of $3,184 for walks, which were neither contracted nor constructed. Deducting this $3,184 from the total estimate of $9,209.75, we find the total estimate of work actually done was $6,025.74, and conclude that under the rulings of this court in *Chehalis v. Cory, supra,* an assessment for that sum could be sustained, provided the cost of the improvement, including overhaul and engineering charges, amounted to that much, but that no larger assessment could be sustained. On the rehearing in *Chehalis v. Cory, supra,* we said:

"It will be seen that it was the evident intent of the legislature to so frame the law that property which had received the lawful benefit of an improvement should meet the cost thereof in such an amount as, according to the true intent and meaning of the act would be properly chargeable against it. In the case at bar, the council had jurisdiction to levy an assessment not exceeding $6,000; beyond this, it could not go without notice. But the fact that it did so, does not prevent a levy for the full amount of the original estimate; for, by the very terms of the act, the jurisdiction of the council is preserved, to the end that a recovery may be had to the limit of compliance, disregarding all informalities, irregularities, or defects in the preceedings leading up to the final assessment. It is also urged that, if it was the intention of the court to hold that the assessment should be limited to the amount of $6,000 on the whole district affected, it was not made clear by our former opinion. We had supposed that this followed as a logical deduction from our reasoning. If it does not, it may now be understood that we hold that the assessment made by the city of Chehalis was

not avoided by the fact that the cost of the work was $14,-812.50, whereas the cost, as estimated in the orginal notice, was but $6,000; that the act of the council in so proceeding was a mere irregularity, and to the extent of the original estimate, or $6,000, it has full power to levy upon each lot or tract affected its proper proportion of the cost according to the true intent and meaning of the law."

See, also, *Ellensburg Lodge No. 20, I. O. O. F. v. Collins,* *ante* p. 94, 122 Pac. 1010.

It is manifest that the estimated cost of the improvement actually made was only $6,025.75, and that the city had jurisdiction to make such an assessment, within the limits of that sum, as would pay the actual cost and expense of the improvement. The evidence does not limit the actual cost and expense to $4,375.75, the amount allowed by the final decree, and we therefore conclude that, in the absence of such evidence, the trial judge erred in arbitrarily limiting the assessment to that figure.

The judgment is reversed, and the cause is remanded with permission to the city council to cast a new assessment for the total cost of the improvement, such cost to include the items of overhaul and engineering fees, but not to exceed the estimated cost of $6,025.75. The appellants will recover their costs on this appeal.

DUNBAR, C. J., ELLIS, and CHADWICK, JJ. concur.