[No. 12215. *En Banc.* May 13, 1916.]

Ernest Kuehl et al., *Respondents*, v. The City of Edmonds, *Appellant*.[1]

Statutes — Reenactment — Construction — Municipal Corporations—Public Improvements—Reassessments. The act of 1911 (3 Rem. & Bal. Code, § 7892-1 *et seq.*) relating to local improvements by cities, having carried forward the provisions relating to reassessments, is not to be construed as a new enactment, but as a continuing law from the first amendment in 1893; especially in view of Id., § 7892-70, providing that acts repealed which are reenacted in form or substance shall be construed as continuations or amendments, and saving all proceedings pending under the old law.

Municipal Corporations—Public Improvements—Assessments—Limitations—Estimates — Reassessments — Statutes—Construction. Rem. & Bal. Code, § 7705, limiting the power of assessment of a city of the third class under the old law to an amount equal to the estimated cost, does not limit the power of such city to levy a supplemental or reassessment for the full cost of the work, under the subsequent act of 1911, 3 Rem. & Bal. Code, §§ 7892-42 and 7892-43, which reenacted and carried forward the act of 1893 (2 Rem. & Bal. Code, §§ 7893, 7894, 7895, and 7899), authorizing a reassessment based upon the "actual cost of the improvement at the time of its completion," where the first assessment had failed in whole or in part for any reason, including any "omission, failure or neglect . . . to comply with provisions of the charter or laws . . . as to . . . estimate . . . ." etc. (overruling on rehearing, Id., 85 Wash. 307).

[1]Reported in 157 Pac. 850.

JUDGMENT—CONCLUSIVENESS—REASSESSMENTS — MUNICIPAL CORPO-
RATIONS. In the absence of an adjudication of the actual amount of
special benefits to specific property assessed, a prior judgment set-
ting aside an assessment as having been in excess of the amount
fixed by Rem. & Bal. Code, § 7705, limiting the original assessment
by cities of the third class to an amount equal to the estimated cost of
the work, is *res judicata* in proceedings to reassess of nothing save
the invalidity of the first assessment roll.

MUNICIPAL CORPORATIONS—PUBLIC IMPROVEMENTS—REASSESSMENTS
—LIMITATIONS. An attempt to reassess under a prior law the full
cost of an improvement, abortive by reason of an insufficient esti-
mate, does not exhaust the power to reassess to pay the actual cost.

SAME—PUBLIC IMPROVEMENTS—REASSESSMENTS—INTEREST. Upon
making a reassessment to cover costs that could not be legally in-
cluded in the original assessment, it is proper to include interest
on warrants issued for the improvement, from the date of their
issuance to the date when the first assessment for that amount be-
gan to bear interest.

CHADWICK and BAUSMAN, JJ., dissent.

Appeal from a judgment of the superior court for Sno-
homish county, Alston, J., entered May 27, 1914, in favor of
the plaintiffs, setting aside a reassessment on appeal from
the order of the city council confirming the roll. Reversed.

*Preston & Thorgrimson* and *Turner & Hartge,* for appel-
lant.

*Earl W. Husted,* for respondent.

*H. M. Stephens, H. W. Hale,* and *J. H. McDaniels, amici
curiae.*

## ON REHEARING.

ELLIS, J.—In 1909, the city of Edmonds, a city of the
third class, provided by ordinance for the improvement of
Dayton street. An assessment roll was made assessing the
property benefited for the full cost of the improvement,
amounting to $8,317.33. At the suit of Peabody and others,
the superior court enjoined the collection of the assessment
for any greater amount than $4,375.75. The city appealed,
and in *Peabody v. Edmonds,* 68 Wash. 610, 123 Pac. 1018,

we found that the estimated cost of the improvement was
$6,025.75. Following the case of *Chehalis v. Cory*, 54 Wash.
190, 102 Pac. 1027, 104 Pac. 768, we held that an assess-
ment only to the extent of that estimate was valid. Shortly
thereafter an assessment to that amount was levied. Some-
time later, a reassessment, or supplemental assessment, was
made under the act of 1911, which in the meantime had been
enacted. This included the balance of the principal of the
cost of the improvement, amounting to $2,292.33, and in-
terest on all the warrants issued, amounting to $2,161.34,
making a total of $4,453.67, which is the amount of the new
roll. From this supplemental assessment, certain interested
property owners appealed to the superior court. That court
held that the council had no power to make a reassessment
or supplemental assessment, and further, that our former
decision in *Peabody v. Edmonds, supra*, was *res judicata* of
the amount which could be lawfully assessed against the
property. There was no showing that the council acted
fraudulently or was in any way guilty of bad faith in the
premises. There was no showing that the property in the
district was not benefited in the full amount of the original
and supplemental assessments, nor that the property of the
appellants was assessed in excess of its proportion of the
actual benefits conferred by the improvement. The city ap-
pealed. That decision was affirmed by Department One of
this court in *Kuehl v. Edmonds*, 85 Wash. 307, 148 Pac. 19.
A rehearing having been granted, the case was reheard by
the court *En Banc*.

On mature reconsideration, we are forced to the conclusion
that the Department decision is erroneous, in that through-
out it apparently proceeds upon the assumption that, by the
act of 1911, the legislature for the first time authorized a
reassessment for the actual cost of the improvement up to the
full amount of the special benefits to the property assessed,
notwithstanding the original assessment had been held void
in whole or in part for lack of a sufficient preliminary *esti-*

*mate;* whereas § 6 of the law of 1893, Laws 1893, p. 229 (2 Rem. & Bal. Code, § 7899), which was in full force when the improvement here in question was made and when the judgment setting aside the first assessment was entered, contained substantially the same provisions as those of §§ 42 and 43 of the act of 1911. As a matter of fact, the body of the law relating to reassessments was not materially changed, but was reenacted by the act of 1911. Compare the statute of 1893, as amended in 1909, Laws 1909, p. 128 (2 Rem. & Bal. Code, §§ 7893, 7894, 7895 and 7899) with §§ 42 and 43 of the statute of 1911, Laws 1911, pp. 468, 469 (3 Rem. & Bal. Code, §§ 7892-42 and 7892-43). The provisions relating to reassessments, being carried forward and reenacted in substance in the statute of 1911, are not to be construed as a new enactment, but as a continuing law from the first enactment in 1893. This is not only true as matter of construction independent of statutory declaration to that effect (*Pierce County ex rel. Maloney v. Spike,* 19 Wash. 652, 54 Pac. 44), but it is so declared in § 70 of the statute of 1911, in express terms as follows:

"Any acts or parts of acts herein repealed, which are reenacted in form or in substance in this act shall not be construed as new enactments but as continuations and amendments of such acts or parts of acts.

"All rights of action under existing laws which this act in any way supersedes or repeals, if the same at the time of taking effect of this act shall not have been commenced, shall proceed under the provisions of this act. All actions and proceedings, which may be pending in court under existing laws which this act in any way supersedes or repeals, shall proceed without being in any manner affected by the passage of this act. All proceedings commenced by any city or town before the taking effect of this act, relating to the making of any local improvement, shall proceed without being in any manner affected by the passage of this act, except as provided in section 7892-24." 3 Rem. & Bal. Code, § 7892-70.

When this section is read in its entirety, the statement in the Department opinion that "the limit of the power under

the act of 1911 is to make all necessary assessments, reassessments or supplemental assessments within the limit of the sum fixed by the law governing the improvement at its inception," loses all point. This is manifest from the simple fact that the law, *at the time of the inception of the improvement*, fixed no limit to the power to reassess other than the actual cost of the improvement apportioned according to special benefits.

It may be objected that the statute of 1893 did not provide for a supplemental assessment. True, it did not *eo nomine*, but it did provide for a reassessment whenever an original assessment had been declared void "in whole or in part," which comes to the same thing. Laws 1893, p. 234, § 3 (2 Rem. & Bal. Code, § 7893).

The Department opinion argues that:

"The basic principle underlying the *Cory* case and our former decision in this case is that, where the legislature has granted a general power or a power with limitation, a city, in the exercise of that power, may so conduct itself as to work an estoppel, and the relative rights of the property owner and the city will be fixed and determined by reference to the law as it existed at the time."

This is true, but the estoppel only extends to the original assessment, since the law *as it existed at that time*, while it required a preliminary estimate of the cost and a hearing thereon pursuant to notice as a prerequisite to a valid *original assessment* (2 Rem. & Bal. Code, § 7705), also declared in § 7899, the section relating to *reassessments*, that:

"The fact that the contract has been let or that such improvement shall have been made and completed in whole or in part shall not prevent such assessment from being made, nor shall the omission, failure or neglect of any officer or officers to comply with the provisions of the charter or laws governing such city or town, as to petition, notice, resolution to improve, estimate, survey, diagram, manner of letting contract or execution of work, or any other matter whatsoever connected with the improvement and the first assessment thereof,

operate to invalidate or in any way effect [affect] the making of the new assessment or reassessment as provided for by this chapter, charging the property benefited with the expense thereof: Provided, that such new assessment shall be for an amount which shall not exceed the actual cost and value of the improvement, together with any interest that shall have lawfully accrued thereon, and that such amount be equitably apportioned upon the property benefited thereby, according to the provisions of the charter or laws of such city or town. It being the true intent and meaning of this chapter to make the cost and expense of all local improvements payable by the real estate benefited by such improvement by making a reassessment therefor, notwithstanding that the proceedings of the common council or board of public works or any of its officers may be found irregular or defective, whether jurisdictional or otherwise; when such reassessment is completed all sums paid on the former attempted assessment shall be credited to the property on account of which the same was paid."

This section was just as much a part of the law as it existed at the time the improvement was made, entering into the transaction and fixing the rights of the parties, as was § 7705 providing for the estimate. It is an unequivocal declaration that the insufficiency of the estimate is no bar to a reassessment to pay for the improvement, "charging the property benefited with the expense thereof" not exceeding "the actual cost and value of the improvement" and interest. That there might be no mistake as to this intention, the section concludes with the emphatic declaration of an intent to authorize such reassessment even when the proceedings of the council or officers "may be found irregular or defective, whether jurisdictional or otherwise." These same provisions, without a material change and almost *in haec verba*, are reenacted in § 43 of the statute of 1911 (3 Rem. & Bal. Code, § 7892-43), under which the reassessment here in question was made.

The Department opinion, still overlooking the identity of § 43 of the act of 1911, so far as material to the point in-

volved, with § 6 of the statute of 1893 (2 Rem. & Bal. Code, § 7899), or failing to note the controlling significance of that fact, says:

"We may assume, as a matter of law and practice in all cases of this kind, that the sum estimated is a fair amount to be allowed for the improvement; that it is the limit of power and is binding upon the city. If it is not so, the legal effect of the statute of 1911 is to permit the council of cities of the third class, where improvements have been made under the former law, to assess the cost without reference to the law under which the improvement was made, and thus destroy the right of the individual property owner to protest or to be heard in remonstrance."

We can assume none of these things on a *reassessment* made by the city in the exercise of the expressly conferred power to reassess for the "actual cost and value of the improvement." To so assume, as a matter of law, would be to ignore the *law* as written and rewritten by the legislature as a continuing law since 1893. To so assume, as a matter of practice, would be to ignore the *fact* that, at the time of the reassessment, the actual cost had been determined by actual construction of the improvement to be greater than the estimate. To assume that the estimate is "the limit of power binding upon the city" in a reassessment would be to strike from the law as it has existed practically unchanged since 1893 the specific declaration as found in § 43 of the statute of 1911:

"Nor shall the omission, failure or neglect of any officer or officers to comply with the provisions of law . . . as to . . . estimate . . . operate to invalidate or in any way affect the making of any assessment authorized in the preceding section," etc. 3 Rem. & Bal. Code, § 7892-43.

The preceding section (Id., § 7892-42), is the section authorizing a reassessment "based upon the actual cost of such improvement at the time of its completion." It would ignore the fact that the statute of 1893, p. 229, § 6 (Rem. & Bal. Code, § 7899) contains the same declaration, as follows:

"Nor shall the omission, failure or neglect of any officer or officers to comply with the provisions of the charter or laws . . . as to . . . estimate . . . operate to invalidate or in any way effect [affect] the making of the new assessment or reassessment as provided for by this chapter," etc.

The same chapter authorizes a new assessment or reassessment for the improvement "based upon the actual value of the same at the time of its completion." (Rem. & Bal. Code, § 7894). It is true that, as to *original assessments* made by cities of the third class under the provisions of §§ 7705 and 7706, which accorded no notice or hearing to the property owner at any time throughout the entire original proceeding before the council except the notice publishing the resolution containing the estimate, we have assumed that the sum estimated was the limit of the power estopping the city to assess for more *in that proceeding*. This for the simple reason that the published notice of hearing on the estimate was in such original assessment proceeding the only hearing accorded to the property owner. *Chehalis v. Cory*, 54 Wash. 190, 102 Pac. 1027, 104 Pac. 768; *Chehalis v. Cory*, 64 Wash. 367, 116 Pac. 875; *Collins v. Ellensburg*, 68 Wash. 212, 122 Pac. 1010; *Peabody v. Edmonds*, 68 Wash. 610, 123 Pac. 1018. In none of those cases were we speaking of anything save the original assessment. That this is the only sound basis of those decisions is pointed out in *Inner-Circle Property Co. v. Seattle*, 69 Wash. 508, 511, 125 Pac. 970, where, touching the *Cory* case, which is the prototype of the other two, we said:

"A reading .of that decision will show, however, that the conclusions there reached by the court were because of the special provisions of the statute relating to local improve-· ment assessments in cities of the third class, Rem. & Bal. Code, §§ 7705, 7706, requiring such estimate to be made, notice thereof to be given to the property owners, and an opportunity for them to protest against the making of the proposed improvement, before it could be finally ordered by the council, and prohibiting the council from ordering such

improvement over the protest of the property owners except upon certain conditions. No other hearing was afforded the property owners before the council as to the making of the improvement nor as to the regularity and correctness of the assessment levied by the council. The only recourse of the property owners under that statute was by an original action in the courts against the assessment, or in resisting the lien of the assessment when it is sought to be foreclosed in the courts."

Obviously the lack of a sufficient estimate and notice of hearing thereon in the *Cory* case, the *Collins* case and the *Peabody* case, is so far from precluding the right of the city to entertain proceedings to reassess in such cases for the actual cost *after giving notice of a hearing upon the one vital question of benefits*, that it furnished the very ground and necessity for such reassessment, under the specific terms of the statute, as then and now existing. This is far also from saying, as said in the Department opinion, that to sustain the reassessment "is to say that the property owners have no rights that cannot be destroyed by the legislature." On the contrary, it is to say that they have the right to a hearing at some time in the course of the proceedings before the council. If that right is not accorded as to the full amount of the cost of the work by reason of an insufficient estimate at the only hearing given in the original proceeding, then the property owner can only be assessed *in that proceeding* his proportion of the estimate distributed according to benefits. In order to charge him with any part of the actual cost of the improvement above the estimate, a reassessment is necessary so that he may not be deprived of his right to a hearing on the one vital question of the proportional benefits to his property. It is because his right to a hearing cannot be destroyed or ignored that a reassessment or supplemental assessment based on notice and a hearing is essential. It was distinctly so declared in *State ex rel. Barber Asphalt Paving Co. v. Seattle*, 42 Wash. 370, 85 Pac. 11, holding not only that the city has the right to reassess, but that the con-

tractor who, in pursuance of a proceeding initiated without
notice to the objecting property owners, has constructed the
improvement and conferred the benefits can, by mandamus,
*compel* a reassessment on the property benefited to pay the
cost. There the property owners in an outer zone of sixty
feet were reassessed to help pay for an improvement the
original notice of the assessment for which did not include
their property or advise them that they would be required
to bear any part of the cost. The first assessment was held
void as to their property because made without notice. The
reassessment on the same property for the same improvement,
in *Johnson v. Seattle*, 53 Wash. 564, 102 Pac. 448, was sus-
tained because made with notice and a hearing on the ques-
tion of benefits. On no sound principle can that case be dis-
tinguished from this, either in morals or in law. The follow-
ing language in the *Johnson* case exactly expresses the situ-
ation here:

"The cases brought under the old assessment above re-
ferred to are not *res adjudicata*, for the reason that the old
assessment is superseded by the reassessment. Those cases
had reference to the old assessment, and were *res adjudicata*
as to the questions raised therein; but they are not so as to
the reassessment, further than a payment under the old as-
sessment becomes by the ordinance a payment *pro tanto* un-
der the reassessment. The assessment is identical with the
red figures in the old assessment, and appears to be a fair
assessment for benefits received by the property in the dis-
trict. It is not claimed that the property improved has not
received benefits to the amount of the reassessment."

In this respect there is no difference between assessments
and reassessments by cities of the first class and cities of a
lower grade. In the absence of an adjudication of the actual
amount of special benefits to specific property assessed, the
prior judgment is *res judicata*, in proceedings to reassess,
of nothing save the invalidity of the first assessment roll.
*East Hoquiam Co. v. Hoquiam*, 90 Wash. 210, 155 Pac.
754; *Ryan v. Sumner*, 17 Wash. 228, 49 Pac. 487; *Waldron*

*v. Snohomish,* 41 Wash. 566, 83 Pac. 1106; *Frederick v. Seattle,* 13 Wash. 428, 43 Pac. 364; *Cline v. Seattle,* 13 Wash. 444, 43 Pac. 367; *Inner-Circle Property Co. v. Seattle,* 69 Wash. 508, 125 Pac. 970; *Allen v. Bellingham,* 77 Wash. 469, 137 Pac. 1016; *State ex rel. Hindley v. Superior Court,* 82 Wash. 37, 143 Pac. 455; 2 Page and Jones, Taxation by Assessment, § 991. There is nothing in §§ 7705 and 7706, under which the original assessment was made, declaring or implying that the original estimate shall be assumed to be the limit of benefits in a proceeding to reassess. On the other hand, as we have seen, the reassessment law, as found both in the act of 1893 and in the act of 1911, makes the failure of the preliminary estimate a specific ground for reassessment. Indeed, the failure or insufficiency of the initial estimate is typical of the cases in which the power to levy a reassessment or supplemental assessment is most frequently invoked.

"Cases of this sort arise most frequently where the original assessment is based upon a preliminary estimate, and is levied before the improvement is completed, or before the cost thereof is determined as a finality. In rarer instances, the exercise of the power is sought where, owing to some mistake, the cost of the improvement has been computed erroneously, and the assessment has been levied for too small an amount to meet the cost of the improvement." 2 Page and Jones, Taxation by Assessment, § 932.

The Department opinion, being based upon a misconception of the law touching reassessments as it existed when the improvement was made, reaches a palpably erroneous conclusion.

But there is another fundamental error in the Department opinion making it unsound, even if the power to reassess for "the actual cost and value of the improvement at the time of its completion" had been first conferred upon the city by the statute of 1911. That error lies in the assumption that the legislature, by requiring a preliminary estimate of the

cost of the work and a notice and hearing thereon in the old law (Rem. & Bal. Code, § 7705), made that estimate a final limitation upon its own inherent constitutional power to authorize, by subsequent enactment, a reassessment or supplemental assessment for the actual cost and value apportioned according to benefits upon the property specially benefited. The limitation imposed by the estimate and notice was a limitation estopping the *city alone, and in that proceeding based on that notice alone,* to assess beyond the amount of the estimate. That was all that was held in the *Cory* case, in the *Collins* case and *Peabody v. Edmonds, supra,* because that was all there was before the court in those cases. That the legislature has the power to authorize a reassessment even where the city council had never acquired any jurisdiction to levy the original assessment or to order the work done, was held by this court in *Frederick v. Seattle, supra,* where it is said:

"The retrospective power of the legislature over subjects of assessments and taxation where past proceedings have proved defective or irregular by reason of the want of power in local boards to act, or by reason of non-compliance with existing provisions of law, is well established by the authorities. One of the leading cases on this question is that of *Mills v. Charleton,* 29 Wis. 400 (9 Am. Rep. 578), where it was decided that the reassessment of a tax under a new grant of authority is not a re-opening of the judgment by which the former assessment was declared invalid and proceedings thereunder restrained; and that it did not conflict with the general rule that a statute which operates to annul or set aside the final judgment of a court of competent jurisdiction and to disturb or defeat vested rights is void; the distinction being that the general rule had reference to matters of mere private right."

See, also, *State ex rel. Hemen v. Ballard,* 16 Wash. 418, 47 Pac. 970. Such is the view generally entertained by the courts. 2 Page and Jones, Taxation by Assessment, § 959.

"The rule applicable to cases of this description is substantially the following: If the thing wanting or which

failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the legislature might have dispensed with by prior statute, then it is not beyond the power of the legislature to dispense with it by subsequent statute." Cooley, Constitutional Limitations (7th ed.), p. 531.

See, also, 4 Dillon, Municipal Corporations (5th ed.), § 1469; *Seattle v. Kelleher*, 195 U. S. 351; *Owings v. Olympia*, 88 Wash. 289, 152 Pac. 1019.

In every view of the matter, we are convinced that the attempt under the prior law to assess for the full cost of an improvement, abortive, either wholly or in part, by reason of an insufficient estimate, did not exhaust the power expressly conferred by the legislature upon the city to reassess to pay the actual cost of the improvement and interest if within the actual special benefits conferred upon the property assessed.

It has been argued, in substance, that, if the reassessment for the actual cost of the improvement apportioned according to benefits to the property assessed be sustained in this case, the property owner will be robbed of his judgment in the original case and has no rights which the legislature is bound to respect. But the power conferred upon the legislature by the constitution (art. 7, § 9), and exercised by the legislature in the law authorizing such a reassessment, existing now and when the improvement was made, cannot be phrased away in such fashion. If the system of local assessments on the property benefited to pay the actual cost of local improvements is wrong in theory, it is for the people to correct that wrong by amending the constitution, or for the legislature to repeal the laws plainly conferring the power on the city. It is not for the courts, by any process of judicial attrition through strained construction, to seek to wear away the power granted in plain terms. But the property owner is robbed of nothing. His judgment in the first assessment has insured him a hearing on the question

of proportional benefits, which is the only constitutional right he ever had in the premises. If his property has been benefited by the improvement, he is robbed of nothing when that property is assessed to pay its proportional share of the cost within that benefit. The benefits conferred furnish the moral basis, hence the only natural limit to the right of reassessment for the cost of the improvement. *East Hoquiam Co. v. Hoquiam, supra; Seattle v. Kelleher, supra.*

We deem it a matter of no importance that the law governing original assessments, as amended by the act of 1911, now requires no preliminary estimate; a hearing before the council on the question of benefits being now accorded instead of the former hearing on the estimate. But the hearing on benefits in case of a reassessment has always been accorded ever since the passage of the act of 1893. If the new law as to original assessments dispensing with the estimate is valid as furnishing due process of law, then also is the law affording · the same hearing on the reassessment. *Johnson v. Seattle, supra.* When the new reassessment law and the old reassessment law are considered together, the one as a substantial reenactment of the other, the question here presented becomes a simple one. We have discussed it thus at length because of the confusion occasioned by some of our own utterances.

Some question is made as to the right to include in the new assessment interest on the first $6,025 of warrants issued for this improvement, from the date of their issuance to the date when the first assessment for that amount began to bear interest. The inclusion of interest in the reassessment was proper. *Philadelphia Mortgage & Trust Co. v. New Whatcom,* 19 Wash. 225, 52 Pac. 1063; *Northwestern and Pacific Hypotheek Bank v. Spokane,* 18 Wash. 456, 51 Pac. 1070; *Lewis v. Seattle,* 28 Wash. 639, 69 Pac. 393; *Johnson v. Seattle, supra.* We can conceive of no reason why the particular item of interest referred to should not fall within the rule.

The Department opinion is overruled, the judgment of the trial court is reversed, and the cause is remanded with direction to confirm the new roll.

MORRIS, C. J., HOLCOMB, MAIN, MOUNT, and PARKER, JJ., concur.

CHADWICK, J. (dissenting)—The contentions of counsel rest primarily on the well settled propositions that, where the original proceeding has failed for reasons that the legislature may lawfully obviate, and the basis for taxation still remains, namely, the public benefit received, the legislature may authorize a reassessment; that the only limitation upon the legislature, and in turn upon the city, is that in no case shall the assessment exceed the benefits accruing to the property from the improvement; that the power to make local improvements under the special assessment plan is referable to the power of taxation, upon which there is no limit until the object sought is obtained; that the courts cannot question the power or authority of the legislature to permit, by remedial or curative act, the performance of any act that will result in the final collection of the tax; that there is no limit to the power to reassess under the act of 1911, which is no more than this and other courts have frequently held to be the law; that the act permits an assessment where "from any cause" the assessment has failed, and that every possible objection is met by a provision that the reassessment shall not be made until after notice by the council to the property owner.

It is not necessary to cite the many cases to be found in our reports which sustain these propositions, nor am I disposed to question the comprehensiveness of the act of 1911. Indeed, it may be logically inferred that it was passed at the instance of the cities and private parties affected by the decisions of this court in *Chehalis v. Cory*, 54 Wash. 190, 102 Pac. 1027, 104 Pac. 768; *Id.*, 64 Wash. 367, 116 Pac. 875, and *Collins v. Ellensburg*, 68 Wash. 212, 122 Pac. 1010.

But, after a careful consideration of the arguments of counsel, review of the cases cited, and an acknowledgment of the foregoing principles, I am still of the opinion that the act of 1911 does not control in this case.

Our attention is called to the fact that we assumed in the case of *Van Der Creek v. Spokane*, 78 Wash. 94, 138 Pac. 560, that there was no law prior to the enactment of the act of 1911 which limited the tax upon property to fifty per cent of its assessed value, whereas a similar provision is to be found in the act of 1903; and that many cases of reassessment for a greater sum have been sustained under that statute. It may be true that reassessments have been sustained, but it is also true the point that the limit of power to assess beyond the amount of the estimate was not raised or discussed in any case prior to the *Cory* case, nor does it appear that any such reassessment was made after the amount chargeable to the property had been fixed by final judgment of the courts.

The point made in this case does not occur in any of the cases relied on. The decisions turned upon the propositions that the legislature could grant the power to reassess where the assessment had failed for any cause, and, the limit of the burden to be imposed being defined in the constitution as the extent or amount of benefit, the property owner was without remedy to raise any question other than the question of benefit and the amount of the assessment.

The act under which the improvement was made in this case arbitrarily fixed a limit of benefit. It was apparently passed to cure the loose methods theretofore prevailing, and to give the property owner some notion of the burden to be imposed. It required a notice, not of the amount of the assessment only, but of the proposal or intent to make the improvement. It was so drawn that in its workings it resulted in a compact between the city and the property owner. If the estimate seemed reasonable, the property owner might rest under the legal assurance that his prop-

erty would not be eventually invaded by a proceeding brought under the plea of a right to assess or to reassess without limit up to a sum arbitrarily asserted to be within the limit of actual benefit. The limit of power was in the act; to go beyond it would operate as a constructive fraud upon the property owner, who might be lulled into a sense of security by the carelessness or design of the council, and eventually suffer the confiscation of his property.

The governing principle is so well stated in the *Collins* case that it needs no repetition. It is quoted in the original decision of this case. (*Kuehl v. Edmonds*, 85 Wash. 307, 148 Pac. 19). It is enough to say that the city should be estopped to exceed the estimate in the actual cost of the work. The city, as in the *Cory* and *Collins* cases, had submitted a plan which the property owner either assented to or was bound by after protest. The statute fixed the rights and the relations of the parties. When the city departed from the plan proposed, its acts were challenged.

Taking the case at bar: The city council went in the teeth of the decision in the *Cory* case and, upon the suit of *Peabody v. Edmonds*, 68 Wash. 610, 123 Pac. 1018, it was held that an assessment in excess of the estimate was void. A petition was thereafter filed in which we were asked to tell the city what to do; to define a procedure whereby it could collect the excess from the property owner. This, for obvious reasons, the court refused to do. (*Peabody v. Edmonds*, 72 Wash. 604, 131 Pac. 250.) There was a judicial finding that the statute in force at the time fixed the rights of the parties, and that the city was estopped to charge more than the estimate.

Moving in a fog of its own creation, the majority assumes to correct our former holding that a reassessment after a judgment would deprive the property owner of something of value, a vested right. It is said:

"But the property owner is robbed of nothing. His judgment in the first assessment, has insured him a hearing on

the question of proportional benefits [He had this without his judgment] which is the only constitutional right he ever had in the premises."

The majority has failed utterly to see that the law gave to the property owner more than a mere right to protest the *amount* of his assessment. He was guaranteed the right by statute to *protest against the improvement*. When the city did not keep the faith of the statute, which, as we have often held, is as binding upon a city as is the constitution itself, and the property owner has taken a judgment fixing the limit of the assessment at the limit fixed by the statute, he has been deprived of something of value, a judgment fixing the extent of his liability. That a judgment vests a right that cannot be impaired by a subsequent statute is primer law. 36 Cyc. 1211. It follows that the right to insist upon a proportional assessment is not the only constitutional right the property owner has in this case, although we may grant that, but for the judgment, the argument of the majority is sound.

As shown in our former opinion, the legislature cannot, under the guise of a curative act, grant a right or power resting in jurisdiction that did not exist at the time the right of the taxpayer became fixed. The legislature can cure a defective execution of power or any omission or irregularity, but it cannot take away a right that is vested under an existing statute, or cure an act that was *ultra vires* at the time it was done. The act of 1911 is, in legal effect, no more than an attempted repeal of the limitation fixed by the act of 1903; Laws 1903, p. 231. The assessment in this case did not fail because of any error, defect, or omission in the procedure. It failed *pro tanto* because the city did not have jurisdiction to assess for any sum greater than the estimate.

It was strenuously objected in the *Cory* case, as here, that the estimate was not jurisdictional; that it involved only a question of judgment, and that there was no more than an error of judgment, an irregularity, and so long as the as-

sessment did not exceed the benefit, the property owner has no vested right, and cannot complain so long as the assessment does not pass the limit of benefit. Our holding was that the legislature had fixed the limit of benefit. The right of the legislature to do this is noticed in the *Rucker Brothers v. Everett* case, 66 Wash. 366, 119 Pac. 807, where the court says:

"There is no constitutional limit of this nature to local assessment taxation. Hence, the law-making power could have left the amount entirely without limit of this nature, or could have fixed any limit deemed expedient."

The right to notice of the intention to improve and to protest in such a case is fundamental, as held in the *Cory* case. It is held, without division of opinion, that, where juridical facts are wanting, they cannot be supplied by a subsequent proceeding authorized by a retrospective law. A legislature cannot impair vested rights by a curative act. 2 Lewis' Sutherland, Statutory Construction, 675. A vested right is defined in Black's Law Dictionary as follows:

"Rights which have so completely and definitely accrued to or settled in a person that they are not subject to be defeated or cancelled by the act of any other private person, and which it is right and equitable that the government should recognize and protect, as being lawful in themselves, and settled according to the then current rules of law, and of which the individual could not be deprived arbitrarily without injustice, or of which he could not justly be deprived otherwise than by the established methods of procedure and for the public welfare."

Where the act would operate to deprive the property owner of the right to protest the improvement when proposed, or to appeal from or review the act of the council—privileges which were given him under the law existing when the improvement was made—and the limit of the assessment has been fixed by a court of competent jurisdiction, whether rightfully or wrongfully, it should not be seriously contended that this right is not vested.

Irrespective of statute, no assessment can be levied in excess of benefit. Let us suppose that there is no constitutional inhibition, and a city should make an improvement that required a tax in excess of benefits, and the legislature passed an act permitting an assessment without reference to benefit, or ten per cent in excess of benefits. Such an act would be admittedly void. The same principle applies here. It was within the province of the legislature to fix the limit of benefit, and, having done so and the proceeding being regular and having passed to judgment, it cannot, by a subsequent act, repeal that limit, fix a greater limit, or say that the limit is the actual benefit received.

We have said heretofore that the statute under which the assessment was made fixes the rights and obligations of the parties. The right of the city is to assess a sum equal to the estimated cost, and the duty of the property owner is to pay within that limit. Neither party could claim a vested right in the remedy, applying to either the right or the obligation. Curative acts presuppose jurisdiction to do the thing which is attempted to be cured. They cure irregularities in exercising a power lawfully possessed; beyond this they are never sustained. *Harris v. Ansonia,* 73 Conn. 359, 47 Atl. 672.

In Page and Jones, Taxation by Assessment, § 981, the rule is stated: "If an estimate is a jurisdictional fact, these curative statutes do not apply where no estimate has been made." By the same reasoning, it would seem, where an estimate is made under a valid statute and the improvement is made in defiance of it, that a curative act would not apply. In *Erie v. Brady,* 150 Pa. St. 462, 24 Atl. 641, the law required an estimate of the probable cost of the improvement. No estimate was made. The assessment was held void. The passage of an act repealing the requirement of an estimate was obtained. (The act of 1911 is no more nor less than a repealing statute.) Upon suit brought, the court held that

the curative act did not validate the proceeding.   See, also, *Erie City v. Brady*, 127 Pa. St. 169, 17 Atl. 885.

Mr. Lewis, in his work on Sutherland, Statutory Construction, § 284, says:

"A contractor for grading streets was authorized by the existing law to sue delinquent abutters for unpaid assessments. This right of action was held a part of the contract and not taken away by repeal of the law creating it."

citing *Creighton v. Pragg*, 21 Cal. 115. The rule of the case is stated in the syllabus:

"Where a contract is made and executed in pursuance of a statute, which also prescribes the parties against whom and the mode in which it may be enforced, the right to enforce it in the manner prescribed is a part of the contract, and is not affected by a subsequent act repealing the provisions in reference to the enforcement of the contracts authorized by the statute under which it was made."

It would seem, if the right of the creditor in the transaction is fixed by the existing law and cannot be diminished by a subsequent law, that the liability of the property owner could not be enlarged by like methods.

In *Matter of Second Avenue M. E. Church*, 66 N. Y. 395, the legislature had, by general law, provided that property should not be assessed for a sum exceeding one-half the value of the property as valued by the assessing officers. A greater assessment was made under a subsequent act providing that no assessment should be vacated for an omission in the performance of any official duty or in carrying out the details of a law or ordinance, or for any irregularity. It was held that the act was not retroactive. The court, in passing, touches the very point in issue here:

"A proviso in a grant or enactment, is something taken back from the power first declared. The grant or enactment is to be read, not as if the larger power was ever given, but as if no more was ever given than is contained within the terms or bounds of the proviso."

And in discussing the curative act, the court says:

"The matter alleged by the appellant is not an irregularity, it is lack of fundamental power; it is not an omission to carry out the detail of a law, it is the total want of authorizing law; it is not a defect in the authority to perform a duty imposed, which supposes an official obligation without power adequate, but it is a case of no power given because no duty is imposed; it is not an omission to perform a duty imposed, but a case where, as last said, there is no duty created."

The words "or for any cause," in the act of 1911, must be held to mean any cause within the constitutional limit of legislation.

In *Mayor etc. of Baltimore v. Horn,* 26 Md. 194, there had been, as here, a previous adjudication of the invalidity of the proceeding. It was settled by the judgment of the court that the mayor and council had exceeded their powers. In this dilemma, the city authorities adopted measures for, and did procure curative acts of the legislature which authorized them to pay for the improvement and to collect the costs thereof as a tax against the property. In passing on the right of the property owner as it had been fixed by the previous judgment of the court, and of the power of the legislature to pass a curative act after judgment, the court said:

"The most prominent objection to this law, taken in the argument by the counsel of the appellees, was that the legislature in passing it, exercised judicial power, which, by the Declaration of Rights, and numerous decisions in this state and other states of the Union, which separate the judicial from the legislative and executive powers of government, it could not assume and exercise. And this position, we think, is well taken. When this law was passed, the rights of the parties under the law of 1856, ch. 164, had been judicially determined by this court. In the case of *Porter v. The Mayor & City Council,* this court had adjudged that the parties assessed in certain proceedings under that law, were not liable for the assessments, and had perpetually enjoined the city authorities from proceeding to collect them; and yet the law of 1864, ch. 344, passed after that decision, expressly authorized those authorities to proceed and collect them. It

adjudged those parties to pay that which this court, in a regular proceeding, determined they were not bound to pay. It, in effect, and that most plainly, reversed the judgment of this court. That which this court said was illegally done, or done without authority of law, or in contravention of law, and that the parties could not be assessed for, this act of assembly clearly declares shall be paid for by the parties, although they were relieved from that payment by the final determination of this court. There certainly could not be a more plain assumption of judicial power by the legislature, than was exercised by the enactment of the law of 1864, ch. 344, and as such, this law must be pronounced inoperative and void. It is unnecessary to repeat the reasons and grounds which have guided the courts in adjudications of this kind."

Other cases which seem to me to be in point are cited in the original opinion of this court.

Mr. Gray, in his work on Limitations of Taxing Power and Public Indebtedness, questions the broad rule which rests on jurisdiction, but, nevertheless, finds satisfactory ground upon which to rest the judgments of the courts holding that a legislature cannot, by a repeal of an existing law or a curative act, take away a right vested under an existing law. He says in § 1252a:

"If the general rule be granted that the legislature can validate omissions which it might have authorized in the first instance, there can be no escape from the conclusion that it can validate even the most important omissions in statutory procedure. The truth seems to be that there are certain requirements, customarily inserted in statutes, which the citizen has a right to rely on; that these more important requirements approach almost to the dignity of constitutional rights; that where the citizen has relied on them a kind of estoppel, to speak very loosely, is raised against the state; and that in such cases the rule that the legislature may validate the omission of acts which it might have dispensed with in the first instance is limited by the greater rule that legislative acts which amount to plain and flagrant injustice amount to a taking of property without due process of law,

by whatever theory the taking is sought to be justified. Acts of this class are conceived to be acts which are made by statute to be conditions precedent, by performance of which the administrative officers acquire authority to act at all; and which are links in the chain of procedure by which the citizen may be deprived of his property."

So that, whether we call the governing principle juristic, as we did in the *Cory* case, or one of estoppel, as we did in the *Collins* case, the opinions are sustained in sound reason, and I am not disposed to sanction an overruling of them by a legislative enactment.

It would seem that we did not comprehend the law when writing our former opinions; that we have been the victims of what is now called "judicial attrition." I do not know what that may be, but I do know that the decisions of courts were first reported in the year 1066, and from that time until this court found a way to say that its former adjudications upon the subject-matter of the present controversy mean nothing, it has been understood that a final judgment meant something to the one who had prevailed in an action at law or a suit in equity. The majority has, however, with a gravity that would be ludicrous if it were not for the disastrous consequences to the property owner, held, for the first time in the history of jurisprudence, that a judgment of the supreme court of this great state is a liability instead of an asset.

This decision puts us in a most unenviable position. While the court may be applauded for its dialectics, it would seem that we should, in simple honesty, have said to Cory, and to Collins, and to Peabody, and to Kuehl that their fight was a futile thing, that they had no right that could not be taken away from them by another and an independent proceeding; that a judgment of this court would not evidence their legal rights, but rather their folly in appealing to the courts; that, while technically they were right, it would be for their best interests to hold against them so as to save them the added

costs of a subsequent proceeding which the judgment of the court would not bar.

It should not be understood that I hold that a city cannot make a reassessment where the original assessment has failed for any cause. What I do insist is the law, is that, where a limitation is willfully ignored, and the citizen challenges the proceeding—where the parties clinch and go to the mat— the judgment is a final adjudication of their rights, whether right or wrong.

This decision may satisfy the frigid heart of reason, but it withers the tender soul of conscience. It will encourage those who, in these times of shifting sentiment, say that some courts never make a precedent and never follow one. It will invite appeals, for surely no lawyer will feel safe in advising his client that the law has been settled by a former decision of the court, or that a judgment once entered is final.

The intent of the law, under which the several cases now discredited were decided, was to prevent a careless administration in assessments for public improvements that had well nigh become a scandal and an outrage upon the rights of the property owner.

Notwithstanding the letter, spirit, and intent of the law, the court has held that the limitation means nothing, and that, although the rights of the parties have been settled by a judgment, the city council can, in an independent proceeding, assess at will to cure their excesses, and that the citizen must bear a burden which, if disclosed in the beginning, would have led to such protest as to defeat the whole scheme.

The council could lawfully proceed only under a fixed limitation. My position can be illustrated by resort to an analogy. The law provides that actions upon written contracts shall be begun within six years. Let us suppose that an action had been begun, and this court had held that it could not be maintained because it had not been begun within the

time limited. Then say that the legislature had passed a law that all actions upon written contracts that had been defeated "or failed from any cause" might be begun anew and prosecuted to judgment. I had thought that no court on earth would hold that it could be done, but since the legislature has an unquestioned power to fix a limitation in the first place, and a judgment is no longer a vested right, I imagine the court would, if consistent, hold that the new action could be maintained.

Time and space will not permit a further discussion. I said in one case, *Kincaid v. Seattle*, 74 Wash. 617, 134 Pac. 504, 135 Pac. 820,

"An owner of private property in a city has few rights that the city is bound to respect, but the rights which the constitution gives him are his, and until the people modify their will, no city can take them away."

I claim the privilege of withdrawing that statement, and in lieu thereof, saying that the citizen has no rights that a city council is bound to respect—that is, to say, such is the *present* state of the law.

BAUSMAN, J., concurs with CHADWICK, J.